United States Court of Appeals,

Fifth Circuit.

No. 91–2709.

BITUMINOUS CASUALTY CORPORATION, Plaintiff–Appellant,

v.

VACUUM TANKS, INC., Defendant–Appellee.

Oct. 22, 1992.

Appeal from the United States District Court for the Southern District of Texas.

Before JOHNSON, GARWOOD, and WIENER, Circuit Judges.

JOHNSON, Circuit Judge:

Bituminous Casualty Corporation (Bituminous) appeals a declaratory judgment entered by the district court in favor of Vacuum Tanks, Inc. (VTI). The district court found that Bituminous had a duty to defend VTI against claims arising under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA) which resulted from VTI's waste dumping activities from 1959–1965. Bituminous was VTI's liability insurance carrier during that time period, but neither the parties nor the insurance agent could find copies of the insurance policies. VTI proved that Bituminous issued comprehensive general liability policies but produced no evidence as to the specific terms of the policy. Bituminous searched the file it maintained on VTI, but was unable to find copies of the policies. During the search, it did locate a specimen policy in the file. The district court determined that the specimen policy found by Bituminous in VTI's file provided evidence of Bituminous' duty to defend VTI. The court also ordered that Bituminous reimburse VTI for past defense costs of $59,843.00 and pay VTI's attorney fees through trial and appeal. Finally, the district court found no evidence that Bituminous breached its duty of good faith and fair dealing in its decision not to defend based on the inability to determine the policy terms. VTI did not appeal this portion of the judgment. After a review of the record and the arguments presented by the parties, this Court concludes that the judgment of the district court should be vacated and the cause remanded to the district court.

## I. Facts and Procedural History

The underlying facts of this case are basically undisputed. VTI is in the business of transporting liquid waste materials from industrial sites to disposal sites. VTI has performed these services for many years. During the time period from 1959–1965 VTI purchased insurance from Bituminous. The policy coverages apparently included automobile liability, worker's compensation, and comprehensive general liability (CGL). In 1982, the Environmental Protection Agency (EPA) began investigation of some of the disposal sites to which VTI had transported waste. Owners of property adjacent to one of the disposal sites (not parties to the instant case) also sued VTI. All of the claims revolved around environmental pollution resulting from waste disposal. VTI was found to be a de minimis contributor to the disposal sites and managed to escape the lawsuits with minimal liability. However, the legal costs incurred in extricating itself were considerable. VTI provided notice to Bituminous of the claims arising in the years in which Bituminous was its insurer. Bituminous declined to defend VTI because it could not determine coverage under the policies. Bituminous could not find the policies of insurance issued to VTI, and neither VTI nor the insurance agent who sold the policies could produce copies. VTI did manage to locate information which provided policy numbers and types of coverage from the Texas Railroad Commission, but no copies of the actual policies were ever located.

At trial, VTI produced sufficient evidence to prove that insurance policies had existed during the relevant time period. VTI's president testified that he believed the policy coverage purchased by VTI covered incidents such as the ones in question. Two insurance agents testified that, had VTI sought insurance coverage for its waste dumping activities from them at the time, they would have recommended comprehensive general liability insurance. However, no one testified as to the actual provisions contained in the lost policies.

Bituminous officials testified that any of several forms could have been used to provide the coverage purchased by VTI and that, without knowing the precise form, it is impossible to decide

whether the waste disposal came within the terms of the policies. Furthermore, Bituminous presented evidence that it had attempted in good faith to locate the policies, but that, due to the twenty-five year delay between the policy dates and notification of the claims, it was likely that the policies had been destroyed. In its attempt to prove good faith, Bituminous introduced the contents of its VTI file which included the specimen policy from approximately 1962. VTI objected to the hearsay nature of the specimen policy, and the district court admitted it for the limited purpose of demonstrating the contents of the file on the issue of good faith.[1]

In its order, the district court found that Bituminous had a duty to defend VTI based on the language of the specimen policy. The court further concluded that it was reasonable for VTI to expect coverage for the waste disposal suits under a CGL policy and that "a comprehensive general liability policy at least arguably would have covered the claims raised by Vacuum Tanks." (Final Judgment, at 6). Bituminous argues on appeal that the district court erred in applying an incorrect legal standard to determine that Bituminous owed VTI a defense under the policies and that the district court erred in considering the specimen policy for purposes other than those for which it was admitted. Bituminous also challenges the district court's award of attorney's fees to VTI. Bituminous filed a motion for new trial after judgment but failed to move for a directed verdict or judgment notwithstanding the verdict in the district court.

## II. Discussion

This Court reviews the district court's determination of state law under a de novo standard. *Jones v. Roadway Express, Inc.,* 931 F.2d 1086, 1088 (5th Cir.1991) (quoting *Salve Regina College v. Russell,* —— U.S. ——, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991)).

A. *The Duty to Defend*

---

[1] Bituminous originally offered the specimen policy into evidence for all purposes. VTI raised a hearsay objection which the district court sustained.

The district court in the present case concluded that, to establish coverage, VTI need only prove that a CGL policy had been issued by Bituminous. Based upon that belief, the language of the specimen policy, and a finding that a reasonable insured would carry CGL insurance, the district court, without citation to legal authority, found that Bituminous owed a duty to defend VTI. This Court finds that the district court erred in failing to apply Texas law to the facts of this case.

The well-settled rule in Texas mandates that an insured must prove the terms of the insurance contract between the parties in order to establish coverage under the policy. *Dairyland County Mut. Ins. Co. of Tex. v. Martinez,* 484 S.W.2d 785, 788 (Tex.Civ.App.—El Paso 1972, writ ref'd n.r.e.). There appear to be two ways to prove the terms of the contract. The first and simplest is to introduce the actual policy into evidence. This was clearly impossible in the present case. Where the actual policy is not available, the terms of the contract can also be shown by secondary evidence. This alternative requires evidence of the policy terms, not just evidence of the existence of the policy. *Ranger County Mut. Ins. Co. v. Chrysler Credit Corp.,* 501 S.W.2d 295, 298 (Tex.1973). This type of secondary evidence is admissible under Federal Rule of Evidence 1004 as long as the original contract has not been destroyed or lost in bad faith.

In this case there was no evidence of any bad faith on the part of VTI, and secondary evidence of the policy terms would have clearly been admissible. However, VTI failed to introduce any evidence sufficient to prove the actual terms of the policy.[2] VTI did introduce the policy numbers, dates of coverage, and coverage amounts of the CGL policies. However, Texas cases have held that such information is insufficient for the court to make coverage decisions absent proof of the

---

[2]VTI cites several cases to this Court to support the proposition that the existence and contents of a lost document may be proved by secondary evidence pursuant to Fed.R.Evid. 1004. *See, e.g., Klein v. Frank,* 534 F.2d 1104, 1107–08 (5th Cir.1976); *United States v. Balzano,* 687 F.2d 6, 8 (1st Cir.1982); *Diplomat Homes, Inc. v. Commercial Standard Ins. Co.,* 394 F.Supp. 558 (W.D.Mo.1975); *McCraw v. Maris,* 828 S.W.2d 756 (Tex.1992). This Court agrees with the proposition that a lost document may be proved by secondary evidence; however, VTI failed to present any evidence of the contents of the lost policies for the district court to consider. Proof of the existence of the policies does not obviate VTI of the burden to also prove their contents.

actual policy terms. *Hartford Accident & Indemnity Co. v. Parrott,* 486 S.W.2d 405, 407 (Tex.Civ.App.—Beaumont 1972, no writ); *Equitable Life Assurance Soc'y of U.S. v. Nelson,* 396 S.W.2d 517, 518–19 (Tex.Civ.App.—Ft. Worth 1965, no writ); *Wann v. Metropolitan Life Ins. Co.,* 41 S.W.2d 50, 52 (Tex.Comm'n App.1931, holding approved).[3]

The district court used a specimen policy introduced by Bituminous as evidence of the terms of the lost policies. The district court admitted the specimen policy over VTI's hearsay objection for the limited purpose of demonstrating the contents of Bituminous' file. The district court's use of this evidence for purposes other than evidence of Bituminous' good faith was improper given that the evidence was offered and admitted for that limited purpose.

B. *Attorney's Fees*

Finally, Bituminous challenges the award of attorney's fees to VTI by the district court pursuant to TEX.CIV.PRAC. & REM.CODE § 38.001. Bituminous points to TEX.CIV.PRAC. & REM.CODE § 38.006 which exempts certain insurers from payment of attorney's fees in declaratory judgment actions. While the provision cited by Bituminous appears to be unambiguous, Texas appellate courts have applied it with an unusual twist. In *Prudential Ins. Co. of America v. Burke,* 614 S.W.2d 847, 850 (Tex.Civ.App.—Texarkana 1981), *writ ref'd n.r.e.,* 621 S.W.2d 596 (Tex.1981), the court determined that the Texas Legislature meant to exempt insurance companies from section 38.001 only in cases "where attorney's fees were already available by virtue of other specific statutes." Other Texas appellate courts followed this decision and awarded attorney's fees

---

[3]This Court appreciates the considerable burden of proof such a rule imposes on VTI in this case; however, the reasoning behind the rule is sound. Its purpose is to prevent fraudulent claims. Of course, such a rule was formulated prior to CERCLA which permits actions decades after the statutes of limitations on all traditional causes of action have run. This Court expresses no opinion on how the implementation of CERCLA will affect the issue of an insurer's good faith in future cases involving routine destructions of policies now that such claims may lurk for such an extended period of time.

under section 38.001 in cases where other statutes did not expressly authorize them.[4] The Texas Supreme Court has not expressly affirmed the decisions of this line of cases;  even so, the holdings in this line of cases have not been disturbed.  The only time the Texas Supreme Court addressed this issue was in the case of *Dairyland County Mut. Ins. v. Childress,* 650 S.W.2d 770, 775 (Tex.1983), where it reasoned:

> Art. 2226[5] does not apply to contracts of certain insurors who are identified in those sections of the Insurance Code enumerated in Art. 2226.  Dairyland is a county mutual insurance company and as such is not one of the insurors exempt from the provision of Art. 2226.  Therefore, it is not exempt from a claim for attorney's fees pursuant to Art. 2226.  (citation omitted)

This language implies that an insurer who falls within the provisions of section 38.006 is exempt from the payment of attorney's fees and that only those insurers who do not qualify for the exemption are subject to the payment of attorney's fees.

This Court must follow the Texas Supreme Court's interpretation of section 38.006.  On remand if Bituminous demonstrates that it falls within the provisions of section 38.006, it is exempt from the payment of attorney's fees.

### III. Conclusion

For the reasons stated, this Court VACATES the judgment of the district court and REMANDS for further proceedings consistent with this opinion.

---

[4]*See, e.g., Hochheim Prairie Farm Mut. Ins. Ass'n. v. Burnett,* 698 S.W.2d 271, 278 (Tex.App.—Fort Worth 1985, no writ);  *Vanguard Ins. Co. v. McWilliams,* 680 S.W.2d 50, 52 (Tex.App.—Austin 1984, writ ref'd n.r.e.);  *Bellefonte Underwriters Ins. Co. v. Brown,* 663 S.W.2d 562, 575 (Tex.App.—Houston [14th Dist.] 1983), *rev'd in part on other grounds,* 704 S.W.2d 742 (Tex.1986);  *Texas Farmers Ins. Co. v. Hernandez,* 649 S.W.2d 121, 124 (Tex.App.—Amarillo 1983, writ ref'd n.r.e.), *Aetna Fire Underwriters Ins. Co. v. Southwestern Eng'g Co.,* 626 S.W.2d 99, 103 (Tex.App.—Beaumont 1981, writ ref'd n.r.e.).

[5]Article 2226 was the prior designation of § 38.006 before the reorganization and codification of Texas statutes.  The substance of the statute has not been altered.