United States Court of Appeals,

Fifth Circuit.

No. 93-7463.

MERIDIAN OIL PRODUCTION, INC. (formerly known as El Paso Exploration Company) and El Paso Natural Gas Company, Plaintiffs-Appellants,

v.

HARTFORD ACCIDENT AND INDEMNITY COMPANY, et al., Defendants-Appellees.

July 28, 1994.

Appeal from the United States District Court for the Southern District of Texas.

Before REAVLEY and JONES, Circuit Judges, and JUSTICE,[*] District Judge.

REAVLEY, Circuit Judge:

The insured sought indemnity from its insurer for pollution damages the insured caused a landowner in drilling and plugging an oil and gas well. The insurer obtained summary judgment in the district court, upon the holding that the pollution was not a covered "occurrence." That court also rejected the insured's *Stowers*[1] settlement claim. We affirm.

BACKGROUND

This insurance coverage dispute stems from an underlying property damage suit, in which judgment for the landowner was affirmed by the Tenth Circuit in *Marshall v. El Paso Natural Gas*

---

[*]District Judge of the Eastern District of Texas, sitting by designation.

[1]*See G.A. Stowers Furniture Co. v. American Indem. Co.,* 15 S.W.2d 544 (Tex.Comm'n App.1929, holding adopted).

1

*Co.,* 874 F.2d 1373 (10th Cir.1989). In the *Marshall* suit, Meridian Oil Production, Inc. ("Meridian") (formerly known as El Paso Exploration Co.), was found liable to Donnie and Christie Marshall for the damage to their land caused by Meridian's operation of an oil and gas well on the Marshall property. The evidence in that case showed that Meridian failed to protect a fresh water aquifer, discharged contaminants into open pits on sandy soil, and plugged the abandoned well without guarding against migration between zones and formations. The Oklahoma jury awarded Marshall $400,000 for actual damages and $5,000,000 for punitive damages.

The present action followed Meridian's demand for indemnity for the *Marshall* damages under its comprehensive general liability policies issued by defendants Hartford Accident and Indemnity Company (Hartford), Meridian's primary insurer, and the London Market insurers, who provided excess and umbrella insurance to Meridian. The district court rejected the claim for coverage for the reason that the discharge and release of contaminants was deliberate, causing damage that was the natural result of intended action. Alternatively, the court held that the discharge and release was not sudden and accidental, and was therefore within the pollution exclusion of the policy.

Meridian further claimed that Hartford breached its duty to act reasonably in settlement negotiations under *Stowers,* but the court held that Hartford committed no breach of duty where it reserved its rights in defending the insured and succeeded in declining coverage.

DISCUSSION

*Coverage of Liability for Occurrence*

The Hartford policy defines an "occurrence," the liability for which it protects Meridian, as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." The parties agree that Texas law applies. Texas courts afford coverage for fortuitous damages but deny coverage when damages are the natural and probable consequence of intentional conduct.[2] Regardless of whether the policies involved are worded to cover "accidents" or "occurrences," all

---

[2]*See State Farm Fire & Casualty Co. v. S.S.,* 858 S.W.2d 374, 377-78 (Tex.1993) (applying intentional injury exclusion and acknowledging that coverage exists only for undesigned injury and events which do not result as the natural and probable consequence of actions); *Republic Nat'l Life Ins. Co. v. Heyward,* 536 S.W.2d 549, 557 (Tex.1976) ("injuries are "accidental' and within the coverage of an insurance policy ... if from the viewpoint of the insured, the injuries are not the natural and probable consequence of the action or occurrence which produced the injury; or in other words, if the injury could not reasonably be anticipated by insured, or would not ordinarily follow from the action or occurrence which caused the injury."); *Southern Farm Bureau Casualty Ins. Co. v. Brock,* 659 S.W.2d 165, 166-67 (Tex.App.—Amarillo 1983, writ. ref'd n.r.e.) (no coverage because insured intentionally rammed another vehicle and insured knew or should have known that damage was a natural and probable consequence of act); *Ritchie v. John Hancock Mut. Life Ins. Co.,* 521 S.W.2d 367, 368 (Tex.App.—Waco 1975, no writ) (when one in all reasonable probability expects event to result from his voluntary conduct, event is not an accident); *Chen v. Metropolitan Ins. and Annuity Co.,* 907 F.2d 566, 568-69 (5th Cir.1990) (applying Texas law, question was whether coverage did not exist because death was the "natural and probable" consequence of ingesting too much alcohol at a Chinese festival); *Travelers Insurance Co. v. Volentine,* 578 S.W.2d 501, 503 (Tex.App.—Texarkana 1979, no writ) (in an occurrence policy, accident means an "unexpected, unforeseen or undesigned happening or consequence.")

3

offer minor variations of the same essential concept; coverage does not exist for inevitable results which predictably and necessarily emanate from deliberate actions.

At oral argument, Meridian attempted to demonstrate that damage to the Marshall property was accidental by equating itself with one who intentionally goes over the speed limit and subsequently is involved in an unexpected collision; coverage would still exist. Although we agree with that scenario, Meridian's actions are closer to those of a reckless driver who careens down a busy street while blindfolded and later claims he had "good intentions" but didn't see the stop signs; the resulting damage cannot be characterized as "unexpected." Although the extent of monetary recovery for the damages in the present case might have been unexpected, damage to the surface and subsurface was a necessary companion event to Meridian's conduct. An operator knows when the drill stem goes through a fresh water aquifer and knows that if no surface casing or string of pipe is set in place to protect the water from drilling mud, fluids and subsequent contaminants, the fresh water will be polluted.[3] The operator knows that the pollution will continue if no plug or cemented pipe prevent migration of fluids up and down the well bore. Likewise,

---

[3]As the judge in the *Marshall* trial noted, Meridian proceeded to drill without using water stringers "knowing the geology of the area, a decision that was exacerbated in that they proceeded as they did after meeting with the Oklahoma Corporation Commission officials, a meeting in which the problem was pointed up and which was followed by a letter in October 1981 specifying the problem and directing the use of stringers." The judge also noted that the subject matter was general knowledge within the drilling industry.

4

contaminants dumped on sandy, permeable soil without adequate lining will always pollute. The *Marshall* record establishes as a matter of law that the damages to the Marshall's land were not unexpected from the standpoint of the insured. Because Meridian's conduct inevitably and predictably caused the pollution, summary judgment for Hartford was correct.

*The Stowers Claim*

Because there was no coverage, Hartford had no duty to settle the case in response to the Marshall offer. *See American Physicians Insurance Exchange v. Garcia,* 876 S.W.2d 842, 848-850 (Tex.1994). We are not prepared to say, however, that an insurer who defends an insured is absolved from all extra-contractual duties in every case where the insurer is ultimately held to be responsible for no coverage under the policy.[4] If there is a duty to defend, or if the insurer assumes that duty, the insurer must perform with reasonable care. The insurer may not prejudice the possibilities of settlement for the insured. In the instant case, however, Hartford paid over a million dollars in defense costs; the attorney was chosen by Meridian; Meridian was informed of events, told that coverage was a disputed matter, and told to

---

[4]We have previously acknowledged that the Texas Supreme Court has held that a plaintiff can recover damages from an insurer's breach of the duty of good faith and fair dealing even when there is no recovery under the policy. *See First Texas Sav. Ass'n v. Reliance Ins. Co.,* 950 F.2d 1171, 1178 (5th Cir.1992) (explaining *Viles v. Security Nat'l Ins. Co.,* 788 S.W.2d 566, 567 (Tex.1990)). However, the Texas Supreme Court has recently granted a writ of error to hear *Republic Ins. Co. v. Stoker,* 867 S.W.2d 74 (Tex.App.—El Paso 1993), which squarely addresses the question of whether an extra-contractual bad faith claim can exist when coverage is lacking.

5

negotiate a settlement for its own benefit if it chose.  Meridian's opportunity to settle was not prejudiced by Hartford and there was no issue of lack of care in the defense.  Under the Texas law represented by *Garcia,* we believe the summary judgment against Meridian's *Stowers* claim was correct.

AFFIRMED.