IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 94-20789

_____


BITUMINOUS CASUALTY CORPORATION,

                              Plaintiff-Appellant,
                              Cross-Appellee,

                    versus

VACUUM TANKS, INC.,

                              Defendant-Appellee,
                              Cross-Appellant.

_____

Appeals from the United States District Court for
the Southern District of Texas
_____

February 28, 1996

Before REAVLEY, HIGGINBOTHAM and BARKSDALE, Circuit Judges.

REAVLEY, Circuit Judge:

    In this lost policy case, Bituminous Casualty Corporation

("Bituminous") appeals a judgment entered in favor of its

insured, Vacuum Tanks, Inc. ("VTI").  We modify the judgment so

as to deny the award of attorney's fees to VTI, and otherwise

affirm.

                          BACKGROUND

    VTI is in the business of transporting liquid waste

materials from industrial sites to disposal sites.  It became the

subject of several pollution damage and cleanup claims relating

to dumping activities from 1959 through 1965.  These claims (the

"underlying claims"), were asserted in three separate lawsuits. VTI incurred expenses in defending and settling these claims.

Bituminous, VTI's insurer, initiated this Texas law diversity suit, seeking a declaratory judgment that it had no duty to defend or insure against the underlying claims. VTI counterclaimed, seeking a declaratory judgment that Bituminous had a duty to defend, recovery of its costs in defending the underlying claims, and punitive damages for bad faith denial of coverage. Neither party could find a copy of the annual policies, although Bituminous found a copy of a "specimen policy" for this period.

In 1991 the case was tried to the court and it ruled in favor of VTI on the coverage issue, although it found no breach of the duty of good faith and fair dealing. We reversed and remanded for further proceedings in a prior appeal. *Bituminous Casualty Corp. v. Vacuum Tanks, Inc.*, 975 F.2d 1130 (5th Cir. 1992). We found that "VTI produced sufficient evidence to prove that insurance policies had existed during the relevant time period," *id*. at 1131, but that there was insufficient proof of the actual terms of the policy, or whether the waste disposal claims were covered by the policies, *id*. at 1132-33. We also addressed attorney's fees, as discussed further below.

After remand the district court conducted further trial proceedings. The court again found that Bituminous had issued comprehensive general liability (CGL) policies to VTI which covered the underlying claims. The court awarded VTI certain

2

costs incurred in defending the underlying claims, prejudgment interest and attorney's fees.

In the second appeal, Bituminous does not dispute the conclusion of our prior panel that it had issued policies during the period in question, but again argues that VTI failed to carry its burden of proving "the terms of the insurance contract between the parties in order to establish coverage under the policy." *Id*. at 1132.

## DISCUSSION

A. *Proof of Terms of Coverage*

As in the first trial, the district court concluded that the claims asserted in the underlying actions were covered by the Bituminous policies. The court found that the policies actually issued to VTI had the same terms as those in the specimen policy found in Bituminous' VTI file. This finding by the district court is a finding of fact, which we will not disturb unless clearly erroneous. *Fiberlok, Inc. v. LMS Enters., Inc.*, 976 F.2d 958, 962 (5th Cir. 1992).

The district court did not clearly err in finding that the terms of the policies matched those of the specimen policy. VTI's evidence in support of this finding included the following. VTI again offered the specimen policy, which was written for use in Texas. Unlike at the first trial, VTI offered the policy for all purposes, rather than limiting its offer to the issue of good faith. *See Bituminous*, 975 F.2d at 1132-33.

An assistant director from the Texas Department of Insurance, Charles DuPertuis, testified that the Texas Board of Insurance mandated particular forms for insurance policies for the period in question, and that as a licensed insurer Bituminous was required to conform to the mandatory forms. The Board issued bulletins setting out the required forms. DuPertuis further testified that there were two types of comprehensive policies allowed: a comprehensive general auto liability policy and a comprehensive general liability policy. The only difference between the two concerns automobile coverage not relevant here. DuPertuis testified that the specimen policy produced from Bituminous's files conformed exactly to the mandatory requirements of the bulletins, which were also introduced at the second trial. He testified that a licensed insurer could deviate from the mandatory terms of the approved forms and endorsements only by obtaining Board approval of its own endorsement for a particular named insured.

VTI's independent insurance agent told Bituminous that the policies issued to VTI "were the standard comprehensive general policies with the normal standard endorsements." Kemp Martin, an agent who worked for the successor to the agency employing VTI's original agent, testified to the same effect. Martin also testified that none of the standard approved endorsements at the time, such as endorsements for dog liability and professional services, would have been applicable to this case. VTI offered as exhibits what it claimed were all the approved endorsements

4

for this period. They deal with coverage issues not relevant here such as endorsements for engineers, architects, etc. None of the endorsements would preclude coverage here. A Bituminous internal memorandum concedes that during the period in question policies "had no pollution exclusion wordage."

Evidence was offered that Bituminous knew the nature of VTI's business and that all operations of the insured were covered by the policies. VTI produced Railroad Commission records and other records showing that VTI had comprehensive general liability insurance during the period in question. Jacque DeCoux, the president of VTI and a lawyer, testified that in his opinion, based on his knowledge of the company and the documents he had reviewed, VTI had comprehensive liability coverage with only one endorsement -- a $250 deductible per claim against property damage.

We noted in the prior panel opinion that in lost policy cases the terms of the policy can be established by secondary evidence. *Bituminous*, 975 F.2d at 1132. Based on the evidence presented, the district court did not clearly err in concluding that during the time period in issue Texas was a "standard policy" state, and that all CGL policies were required to contain the terms and provisions in the state bulletins introduced by VTI, as mirrored by the specimen policy.

Bituminous complains that the district court erred in allowing the testimony of Mr. DeCoux because he was not an insurance expert and for other reasons. DeCoux had served as the

5

president of VTI for many years. To the extent that he testified that VTI maintained continuous liability coverage with a certain deductible, his testimony was based on his knowledge of the company and his review of relevant records. To the extent that he testified that the terms of the missing policies matched those of the specimen policy, his testimony was cumulative of other evidence supporting the same conclusion. "Under [FED. R. EVID.] 103(a), appellate courts should reverse on the basis of erroneous evidentiary rulings only if a party's substantial rights are affected. Moreover, the party asserting error based on erroneous rulings bears the burden of proving that the error was harmful." *Carroll v. Morgan*, 17 F.3d 787, 790 (5th Cir. 1994) (citation omitted). Bituminous fails to carry its burden of showing that the testimony affected its substantial rights, even if it was erroneously admitted.

B.   *Coverage Under the Specimen Policy*

Bituminous argues in the alternative that even if the terms of the policies issued to VTI matched those found in the specimen policy, Bituminous had no duty to defend.

The specimen policy covers "all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease . . . sustained by any person and caused by accident." It also covers "all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident."

6

1.  *Injury to Property*

Bituminous first argues that the underlying claims do not constitute "injury to or destruction of property." In particular, it argues that the "CERCLA claims" do not fall within the policy coverage for property damage.

Under Texas law, the duty to defend is determined by the terms of the policy and the allegations of the underlying suit without regard to their truth of falsity. *Gulf Chem. & Metallurgical Corp. v. Associated Metals & Minerals Corp.*, 1 F.3d 365, 369 (5th Cir. 1993). The duty to defend "is owed by each and every insurer whose policy is potentially implicated" and "remains absolute until the insurer proves that its policy covers no remaining claims." *Id*. at 372. In construing the allegations of the underlying suit, "courts liberally interpret the meaning of those allegations in the insured's favor." *Pro-Tech Coatings, Inc. v. Union Standard Ins. Co.*, 897 S.W.2d 885, 887 (Tex. App.-- Dallas 1995, no writ). "Any doubt as to whether the complaint states a covered cause of action is resolved in the insured's favor." *Cullen/Frost Bank of Dallas v. Commonwealth Lloyd's Ins. Co.*, 852 S.W.2d 252, 255 (Tex. App.--Dallas 1993), *writ denied*, 889 S.W.2d 266 (Tex. 1994). Likewise, in construing the language of the policy, "when the language chosen is susceptible of more than one construction, such policies should be construed strictly against the insurer and liberally in favor of the insured." *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 666 (Tex. 1987).

Complaints in the three underlying suits -- the *Alston*, *Cummins*, and *Motco* suits -- are a part of the record. Applying the Texas rules set out above, we can without hesitation conclude that the policy imposed a duty to defend VTI in the *Alston*[1] and *Cummins*[2] proceedings.

The *Motco* suit was brought by the federal government against VTI and other defendants, exclusively under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), 42 U.S.C. § 9607(a).[3] It sought recovery of costs incurred by the government in responding to the releases or threatened releases of hazardous substances at the "Motco" facility or site. Bituminous argues that the cleanup costs

---

The *Alston* complaint alleged that VTI was one of numerous defendants that disposed of hazardous wastes at the "Sikes" and "French Limited" sites. In the complaint the plaintiffs allege that: defendants have "caused injury to the property of the Plaintiffs, and to the persons of those living on the property" (¶ 15); "Defendants caused various harmful substances . . . to come in contact with the persons of Plaintiffs. Said contact was offensive and caused physical harm, including pain." (¶ 30); "The Defendants are liable for personal injury, wrongful death, and injury, damage or loss to real estate caused by the defective and unsafe condition of the real property of the sites . . . ." (¶ 34); "As a result of the acts of the Defendants, the Plaintiffs herein have suffered injuries to both their persons and property," and the damages include cancer, birth defects, and other ailments (¶ 40).

The complaint in *Cummins* alleges that VTI dumped hazardous substances on the "Bailey" and "Cummins" tracts. The plaintiffs' alleged that damages include permanent diminution in the value of their property in the amount of $30 million, and that "additional damages will include further contamination of Plaintiffs' property and continued exposure of the public to the harmful, even fatal, effects of the hazardous substances stored and disposed at the Bailey Waste Disposal Site."

The *Cummins* suit also asserted claims under CERCLA.

8

incurred by the government, recovery of which was sought against the *Motco* defendants under CERCLA, are not for physical injury to or destruction of property, but are economic injury. The policy covers "all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property . . . ." Under the Texas rule that uncertainties as to insurance coverage set out in the policy should be decided in favor of the insured, we conclude that government cleanup costs, incurred in responding to the dumping of hazardous wastes on property, and imposed on the insured by CERCLA, are covered by this language in the policy. We find that such a reading is a reasonable and straightforward interpretation of the clause in issue. Most, but not all, federal courts construing the law of various states agree. *See Aetna Casualty and Sur. Co. v. Pintlar Corp.*, 948 F.2d 1507, 1511-15 (9th Cir. 1991); *Independent Petrochemical Corp. v. Aetna Casualty and Sur. Co.*, 944 F.2d 940, 946-47 (D.C. Cir. 1991), *cert. denied*, 503 U.S. 1011 (1992); *New Castle County v. Hartford Accident and Indem. Co.*, 933 F.2d 1162, 1184-1191 (3d Cir. 1991); *Avondale Indus., Inc. v. Travelers Indem. Co.*, 887 F.2d 1200, 1206-07 (2d Cir. 1989), *cert. denied*, 496 U.S. 906 (1990); *Dayton Indep. School Dist. v. National Gypsum Co.*, 682 F. Supp. 1403, 1411 n.24(E.D. Tex. 1988) ("Even in cases involving coverage for cleanup costs incurred by a policyholder in complying with governmental directives in environmental matters, the weight of authority and better reasoned decisions hold that those costs are 'damages.'"), *reversed on other grounds*, 896 F.2d

9

865 (5th Cir. 1990); *Intel Corp. v. Hartford Accident and Indem. Co.*, 692 F. Supp. 1171,1188 (N.D. Cal. 1988) ("The clear bulk of authority has held that cleanup costs are damages within the scope of CGL policy coverage."), *reversed in part on other grounds*, 952 F.2d 1551 (9th Cir. 1991); *but see Continental Ins. Cos. v. Northeastern Pharmaceutical & Chemical Co.*, 842 F.2d 977, 987 (8th Cir.) (en banc), *cert. denied*, 488 U.S. 821 (1988); *Maryland Cas. Co. v. Armco, Inc.*, 822 F.2d 1348, 1352 (4th Cir. 1987), *cert. denied*, 484 U.S. 1008 (1988).

    2.    *Accident*

Bituminous also argues that there was no coverage because there was no "accident," since VTI's transportation of hazardous materials was voluntary and intentional. We disagree, since we have held that under Texas law the focus is not on whether the insured's conduct or actions were intentional, but on whether the insured intended the damages or injuries which are the subject of the underlying claims. As we explained in *Meridian Oil Production Co. v. Hartford Accident and Indem. Co.*, 27 F.3d 150 (5th Cir. 1994):

> Texas courts afford coverage for fortuitous damages but deny coverage when damages are the natural and probable consequence of intentional conduct. Regardless of whether the policies involved are worded to cover "accidents" or "occurrences," all offer minor variations of the same essential concept; coverage does not exist for inevitable *results* which predictably and necessarily emanate from deliberate actions.

*Id*. at 152 (footnote omitted, emphasis added). We held that there was no coverage in *Meridian* because "the *damages* to the Marshalls' land were not unexpected from the standpoint of the

10

insured." *Id*. (emphasis added). *See also Gulf Chemical*, 1 F.3d at 370 (holding that relevant question in applying "expected or intended" exclusion is whether the *injury* which forms the basis of the claim is expected or intended by the insured); *Hartford Casualty Co. v. Cruse*, 938 F.2d 601, 604-05 (5th Cir. 1991) (although insured's performance of its services might not be considered an accident, CGL policy covered claims for defective work, since "an occurrence takes place where the resulting *injury or damage* was unexpected, regardless of whether the policyholder's acts were intentional.") (citation omitted, emphasis added). The three underlying suits in our case were not based on allegations that VTI intended or expected the alleged personal injuries, diminution in property values, migration of contaminants, cleanup costs, and other alleged injuries and damages.

*Union Pac. Resources Co. v. Aetna Casualty & Sur. Co.*, 894 S.W.2d 401 (Tex. App.--Fort Worth 1994, writ denied), is also instructive. There, the plaintiff-insured had a CGL policy with the defendant-insurer. The insurer claimed that the policy did not cover the insured's costs of settling a CERCLA cleanup action. It argued that the insured's "liability for cleanup under CERCLA was its dumping of wastes at the landfill, and because that dumping was intentional, it was not an accident." *Id*. at 403. The court rejected this argument, reasoning that "[t]he pertinent 'occurrence' is the migration or emanation of wastes from the point of deposit that results in property damage.

11

The relevant inquiry . . . is whether the policy holder expected the landfill to discharge the waste into the surrounding environment." *Id*. at 404. By a similar analysis, the three underlying suits in our case were based at least in part on the migration of pollutants to the surrounding environment. For example, the *Alston* complaint alleges that the dumped hazardous wastes had seeped into ground water, washed out of the dump site onto the property of plaintiffs, and vaporized into the air, and that plaintiffs had consumed the chemicals through absorption by the skin, ingestion, and breathing contaminated air. The *Cummins* complaint alleged that defendants dumped toxic chemicals at the Bailey site, and that these chemicals had migrated to the Cummins tract which is owned by plaintiffs. In the *Motco* complaint the government alleged that its cleanup response was undertaken based on the release or substantial threat of release of hazardous substances into the environment, and that "hazardous substances and other pollutants and contaminants have migrated out of the [Motco site] and into the environment by overflowing the dikes, inundation of floodwater, and by migrating through the soil."

3. *Policy Period*

Bituminous next contends that VTI failed to prove that the claims occurred during the 1959-1965 period of coverage. It contends that under Texas law an accident occurs not when the wrongful act was committed but when the complaining party was damaged. Assuming that Bituminous is right on the law, and construing the allegations of the underlying complaints liberally

12

in favor of the insured, as we must, all of the underlying suits stated potential claims within the period of coverage, thus imposing on Bituminous its duty to defend.[4]

    4.    *Notice*

Bituminous argues that it had no duty to defend because VTI failed to comply with the notice provisions of the policy. The policy provides that "[i]f claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative," and that "[n]o action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy . . . ." Not only must we construe any ambiguity in these provisions in favor of VTI, but because they involve "an

_____

    The *Motco* complaint alleges that the Motco site was operated as a recycling or waste disposal facility from 1959 to 1968, that VTI disposed of hazardous substances at the site "at relevant times," that hazardous substances had migrated off the site "at various times," and that there have been and continue to be releases of such substances into the environment. The *Cummins* suit alleges that defendants used the Bailey tract as a dump during the 1950's and 1960's, and also dumped wastes on the Cummins tract "in such a manner as to produce hazardous substances which are damaging to the property owned by Plaintiffs." The complaint makes no further attempt to specify the dates that the dumped chemicals migrated from the Bailey tract to the Cummins tract and otherwise diminished the value of plaintiffs' property or caused the other alleged damages. The *Alston* complaint alleges that the plaintiffs were subjected to hazardous chemicals and carcinogens dumped by defendants between the late 1950's and the mid 1970's. Plaintiffs allege that floods at one of the sites between the 1960's and mid 1980's caused chemicals to come in contact with plaintiffs' persons and property, and that flooding at both sites contaminated the property of plaintiffs "on many occasions" since the sites began to be used for hazardous waste disposal. Plaintiffs allege injuries to person and property "over a period of time."

13

exception or limitation on . . . liability under the policy, an even more stringent construction is required." *Barnett*, 723 S.W.2d at 666. "[W]e must adopt the construction of an exclusionary clause urged by the insured as long as that construction is not itself unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent." *Glover v. National Ins. Underwriters*, 545 S.W.2d 755, 761 (Tex. 1977).

Bituminous argues in its brief that "VTI never sent Bituminous any suit papers for any of the lawsuits identified in Plaintiff's Exhibits 1 and 7." The suits identified in Exhibits 1 and 7 are the *Motco* and *Cummins* suits.[5] Exhibit 1 is an August 1, 1986 letter from Mr. DeCoux to Bituminous and other insurers requesting a defense of the two suits. It pointed out that on June 30, 1986, Bituminous had been served in the *Cummins* suit, and that it had been sued but not yet served in the *Motco* suit. As to each suit, the letter identified the cause number, court, parties, waste disposal site in issue, alleged time periods of dumping, alleged damages, and other matters pleaded. In responding to the letter, Bituminous did not request copies of the suit papers, but instead wrote DeCoux that it could not find copies of the policies.

---

Exhibit 7, a March 31, 1987 letter from Mr. DeCoux to Bituminous, discusses the Sikes pit, but VTI was not sued in connection with that site until it was joined in the *Alston* suit in 1991.

Texas courts have held that a failure to forward suit papers as required by an insurance policy relieves the insurer of its obligations under the policy.[6] However, in analogous situations, this court and Texas courts have held that substantial compliance with an insurance policy notice requirement will suffice,[7] and that the insurer can waive the notice requirement through its action[8] or inaction.[9] We hold that VTI substantially complied with the notice requirement by apprising Bituminous in writing of the essential allegations of the underlying suits, and that Bituminous waived further compliance with the notice requirement by failing to request that the suit papers themselves be

---

*Weaver v. Hartford Accident and Indem. Co.*, 570 S.W.2d 367 (Tex. 1978); *Members Mut. Ins. Co. v. Cutaia*, 476 S.W.2d 278 (Tex. 1972). We note that effective May 1, 1973, the Texas State Board of Insurance requires that for general liability policies, the insurer must be prejudiced by the insured's failure to forward suit papers before such failure will bar the insurer's liability under the policy. *American States Ins. Co. v. Hanson Indus.*, 873 F. Supp. 17, 27 (S.D. Tex. 1995); *Chiles v. Chubb Lloyds Ins. Co.*, 858 S.W.2d 633, 635 (Tex. App.--Houston [1st Dist.] 1993, writ denied). However, we apply the law in effect at the time the policy was issued. *American States*, 873 F. Supp. at 28; *Trevino v. Allstate Ins. Co.*, 651 S.W.2d 8, 11 n.1 (Tex. App.--Dallas 1983, writ ref'd n.r.e.).

For example, courts have held that substantial compliance with policy requirements that an insured provide proof of loss to the insured is all that is required. *First Nat'l Bank of Bowie v. Fidelity & Casualty Co. of New York*, 634 F.2d 1000, 1005 (5th Cir. 1981) (applying Texas law); *Henry v. Aetna Casualty and Sur. Co.*, 633 S.W.2d 583, 584 (Tex. App.--Texarkana 1982, writ ref'd n.r.e.); *Dairyland County Mut. Ins. Co. v. Keys*, 568 S.W.2d 457, 459 (Tex. Civ. App.--Tyler 1978, writ ref'd n.r.e.).

*Womack v. Allstate Ins. Co.*, 296 S.W.2d 233, 237 (Tex. 1956) (holding that insurer waived policy provisions requiring notice of suit and forwarding of process).

*Henry*, 633 S.W.2d at 584; *Dairyland*, 568 S.W.2d at 459.

15

forwarded or otherwise objecting to the adequacy of the notice provided by VTI.

Bituminous separately argues that VTI did not give timely notice of the Motco "claim," because "VTI knew about [the Motco claim] as early as 1982." The evidence indicates that for years the government was careful, in the words of DeCoux, "not to accuse anybody of anything," and instead sought only information, but that VTI eventually knew that it faced a potential liability with respect to the Motco site. However, there was no actual claim made until the government filed suit in 1986, shortly before the August 1, 1986 notice letter discussed above. In any event, construing the notice provision in the policy strictly in favor of the insured, there was no "demand, notice, summons or other process received" on the claim that VTI could "forward to the company" until it was served with the *Motco* suit in 1986.

5.  *Voluntary Payment*

The policy provides that "[t]he insured shall not, except at his own cost, voluntarily make any payment. . . ." Bituminous argues that VTI incurred substantial attorney's fees and had arranged for settling the *Motco* claim before giving notice to Bituminous. VTI points out, and Bituminous does not dispute, that the district court did not award these amounts, and only awarded costs incurred by VTI after it sent the notice letter. We see no merit to this argument.

16

C.    *Attorney's Fees*

Bituminous contends that the district court erred in awarding attorney's fees to VTI.  We agree.  We held in the prior appeal that if, on remand, Bituminous could establish "that it falls within the provisions of [Tex. Civ. Prac. & Rem. Code] section 38.006, it is exempt from the payment of attorney's fees."  *Bituminous*, 975 F.2d at 1133-34.  Section 38.006 exempts contracts issued by an insurer subject to the Unfair Claim Settlement Practices Act.  That Act covers stock and casualty companies.  Tex. Ins. Code art. 21.21-2 §7.  At the second trial Bituminous proved that it was a stock property casualty company.

VTI argues that Texas law allows an insured to recover attorney's fees in this case; in effect VTI argues that we should not follow our prior panel opinion.  However, the prior panel decision operates not only as the law of the case in this second appeal, but, as we recently held in *Lafarge Corp. v. Hartford Casualty Ins. Co.*, 61 F.3d 389, 403 (5th Cir. 1995), it must be followed by this court absent a subsequent state decision or statutory amendment which makes the prior decision clearly wrong.  VTI cites us to a dissenting opinion in *Union Bankers Ins. Co. v. Shelton*, 889 S.W.2d 278 (Tex. 1994), which states that attorney's fees are generally available against insurers who are sued for failing to pay claims.  This statement, however, is dicta in a dissenting opinion in which only three judges joined.  The opinion cites as authority numerous lower court decisions, including five which we cited in our prior opinion as not

17

following the prevailing view in Texas.  *Shelton*, 889 S.W.2d at 286 (Cornyn, J., dissenting); *Bituminous*, 975 F.2d at 1133 n. 4. Correct or not, we are bound by our prior panel decision.

D.    *Prejudgment Interest*

Bituminous argues that there is no federal or state statute which allowed the district court to award prejudgment interest in this case.  In this diversity case state law governs the award of prejudgment interest.  *FSLIC v. Texas Real Estate Counselors, Inc.*, 955 F.2d 261, 270 (5th Cir. 1992).  In the absence of a statutory right to prejudgment interest, Texas law allows for an award of equitable prejudgment interest under *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549 (Tex. 1985).  As we have previously explained, equitable prejudgment interest is awarded "as a matter of course when the trier of fact finds that damages accrued before the time of judgment," *Concorde Limousines, Inc. v. Maloney Coachbuilders, Inc.*, 835 F.2d 541, 549 (5th Cir.1987), and such an award "is not generally a matter for the trial court's discretion," *Executone Information Sys., Inc. v. Davis*, 26 F.3d 1314, 1330 (5th Cir. 1994).  "[U]nder Texas law an equitable award of prejudgment interest should be granted to a prevailing plaintiff in all but exceptional circumstances." *American Int'l Trading Corp. v. Petroleos Mexicanos*, 835 F.2d 536, 541 (5th Cir. 1987).  The district court awarded prejudgment interest under the rules for its calculation set out in *Cavnar*. We see no error here.

The judgment is modified to exclude the award of attorney's fees.  Otherwise the judgment is affirmed.

AFFIRMED as MODIFIED.