■ CHASE MANHATTAN BANK, Respondent, v NEW HAMPSHIRE INSURANCE COMPANY et al., Appellants. AXA REASSURANCE S.A., Third-Party Plaintiff-Appellant, v STIRLING COOKE BROWN HOLDINGS LTD., et al., Third-Party Defendants-Respondents. NEW HAMPSHIRE INSURANCE COMPANY, Second Third-Party Plaintiff-Appellant, v STIRLING COOKE BROWN HOLDINGS LTD. et al., Second Third-Party Defendants-Respondents. [759 NYS2d 17] —Judgment, Supreme Court, New York County (Ira Gammerman, J.), entered December 19, 2002, in an action for breach of insurance policies and third-party actions for fraud or negligence in the procurement of the policies, inter alia, awarding plaintiff Chase Manhattan Bank damages against defendants AXA Reassurance S.A. and New Hampshire Insurance and dismissing the third-party actions, unanimously affirmed, with costs. Appeals from orders, same court and Justice, entered June 21, 2002 and October 1, 2002, unanimously dismissed, without costs, as subsumed in the appeal from the judgment.

AXA's contention that the court did not conduct a fair trial is unpreserved and in any event without merit.

No issue of fact was raised as to whether AXA ever "accepted" a "proposed one-picture reinsurance deal" by its fronting insurer on the cash flow policy, since no such "counteroffer"

was ever made by that insurer. Chase's July 9, 1999 letter to the fronting insurer merely reiterated the terms of the policy to the effect that the fronting insurer never had a commitment to Chase to insure an additional film.

Since the jurors were only asked to answer specific questions of fact, namely, whether there was an agreement with respect to the language of the cut-through endorsement in the cash flow policy and whether the fronting insurer agreed to insure the loan under the terms of the AXA policy as of July 9, 1999, there was no need for the court to instruct the jury on the finer points of contract law (cf. CPLR 4111 [a]). The court's instructions also adequately explained the factual question posed under the second interrogatory.

The court correctly ruled that the film "The Crew" constituted a "film production" under the cash flow policy, since AXA accepted the form of "declaration" that was offered therefor. Having accepted the qualifying picture declaration without objection that a schedule 2 declaration had not been submitted, AXA waived its right to insist on submission of the proper form (see Bituminous Cas. Corp. v Vacuum Tanks, 75 F3d 1048, 1056 [1996]).

The court correctly held that the policies' disclaimer clauses bar AXA's fraud/misrepresentation claims against Chase. Under both New York law, which governs the contingent extra expense policy, and Texas law, which governs the cash flow policy, fraud claims cannot be brought by a contracting party who specifically disclaimed reliance on extracontractual representations and indicated that it would make its own investigation of the risks involved (e.g. Mahn Real Estate Corp. v Shapolsky, 178 AD2d 383, 385-386 [1st Dept 1991]; Schlumberger Tech. Corp. v Swanson, 959 SW2d 171, 179-181 [Tex Sup Ct 1997]). The court also correctly applied the disclaimers to preclude AXA's experts from testifying in support of AXA's tort claims against the broker defendants, in view of the pretrial representation by AXA's counsel that he would not elicit testimony relating to any purported misrepresentations of financial projections.

There is no merit to New Hampshire's counterclaim for rescission "as the result of fraudulent misrepresentation and concealments toward AXA on which New Hampshire was intended to rely." The record establishes that New Hampshire was never informed of any alleged misrepresentations and that it relied on AXA's satisfaction with the proposed policy, under which New Hampshire had agreed to conduct its own investigation of the risks involved.

The court correctly concluded as a matter of law that the losses under the two policies were fortuitous. Concerning the contingent extra expense policy, AXA acknowledges that the working capital loan was to be repaid out of the production company's budgeted producer's fees earned for each film that it commenced within a three-year period, excluding "The Crew," under a revolving "Master Facility" to be provided by Chase. The risk to Chase was that the film production company would not be able to commence enough films within the three-year period to generate enough money to repay the working capital loan. Thus, notwithstanding the parties' knowledge of any deficiencies regarding the structure of the working capital facility and Chase's *discretion* to extend its commitment under that facility, the only reasonable construction of the policy, as the IAS court held, is that parties *assumed* that the risk that the production company might not be able to generate films quickly enough to provide funds with which to repay the working capital loan was beyond the control of either party (*see* Insurance Law § 1101 [a] [2]).

The cash flow policy, which provided coverage for the loan facility for the production of "The Crew," involved a fortuitous loss as a matter of Texas law. As the IAS court pointed out: "*[A]llowing* producers not to make presales cannot be said to make them *unable to make* presales. It may make it more likely that the producers will not make presales, but a mere enhanced risk does not constitute an 'inevitable' result which predictably and necessarily results from the insured's actions. Therefore, it does not constitute nonfortuity under Texas law [*see, Bituminous Cas. Corp. v Vacuum Tanks*, 75 F3d 1048, 1054 (5th Cir. 1996)]."

We have considered AXA's contention that the court improperly ruled that New York law, as opposed to French law, applied to AXA's tort claims against the broker defendants and find it to be without merit. Concur—Andrias, J.P., Saxe, Lerner, Friedman and Marlow, JJ. [*See* 193 Misc 2d 580.]