**HARTFORD ACCIDENT & INDEMNITY
COMPANY et al., Appellants,**

v.

**Tommy PARROTT et al., Appellees.**

No. 7371.

Court of Civil Appeals of Texas,
Beaumont.

Oct. 19, 1972.

Mehaffey, Weber, Keith & Gonsoulin, Beaumont, for appellant.

Waldman & Smallwood, Alvin E. Wiggins, Beaumont, for appellee.

KEITH, Chief Justice.

The appeal is from a judgment awarding plaintiff $2110, representing the difference in value of a 1965 PONTIAC GTO automobile before and after a collision in which it was involved. Plaintiff sued the appellant insurance company alleging that it had issued a certain policy of insurance specifically covering such vehicle against collision and upset; that the car was demolished on or about March 24, 1966; that the defendant had denied coverage, etc. Plaintiff also joined the agent whom he alleged issued the policy and sought judgment against him, in the event he did not recover against the insurer. At the conclusion of the evidence, the trial court instructed a verdict for the individual defendant and no complaint is made of such action upon this appeal. The confused record which we review makes an extensive statement necessary.

Although plaintiff alleged that the defendant had issued a policy of insurance, and averred that a copy was attached to his petition, no such copy was attached nor was one introduced upon the trial of the cause, and we do not have in our record any evidence of the terms and conditions of the alleged policy of insurance.

The only evidence we find in our record as to the terms and conditions of the policy upon which plaintiff declared came from the codefendant, Robert Houseman, called as an adverse party by plaintiff. Houseman identified several instruments, among which was one designated "Producer's Copy." Such instrument is a memorandum from Houseman's file showing, inter alia, the policy number, the name of the insured, the effective dates of the policy, the description of the insured vehicle, the coverages afforded by the policy, the amount of the premium, and the name of the loss payee, a bank.

Another instrument was a form designated "Substitution of Automobile" bearing the date of March 11, 1966, which substituted the Pontiac GTO for the Pontiac Tempest. Houseman agreed with counsel that this second memorandum "is not an insurance policy."

In the body of the first memorandum we find this language: "The insurance afforded is only with respect to such of the following coverages as are indicated by a specific premium charge or charges. The limit of the Company's liability against each such coverage shall be as stated herein, *subject to all the terms of this Policy having reference thereto.*" (Emphasis supplied.)

By an instrument dated February 17, 1966, defendant notified plaintiff that the policy would be cancelled effective March 1, 1966, and plaintiff stipulated that he actually received such notice through the mail sometime between February 17 and March 1, 1966. Houseman's notification of the cancellation was given in the form of an instrument dated March 7, which he received shortly thereafter. There being no policy in evidence, we cannot determine whether such cancellation was in accordance with the policy provisions.

We now come to the critical area of the dispute between the parties: the coverage, if any, upon the Pontiac GTO automobile for the loss of which plaintiff recovered. Houseman testified that he issued the rider heretofore mentioned which changed the designated automobile as a Pontiac GTO because plaintiff had showed to him two money order receipts which Parrott said that he had sent to Hartford to pay the delinquent installments upon the policy. Houseman fixed this as being "prior to the effective date of the cancellation," i. e., be-

fore March 1; whereas, plaintiff says that this was done "way before" March 10, when he bought the GTO. Neither the money orders, the receipts exhibited to Houseman, nor any other tangible evidence of payment was offered and there is no record properly showing that the defendant insurer ever received such money orders. Plaintiff did admit that even after sending these two payments he would not have paid his premium note in full, and would still have owed "about another two or three months."

We note, however, that in the notice of cancellation, the insurer had predicated its cancellation upon plaintiff's default of a premium payment amounting to $34.56, and the jury found in answer to Special Issue No. 2 that the defendant received this precise sum "prior to March 1, 1966."

Having overruled defendant's motion for peremptory instruction, four issues were submitted to the jury which we summarize: (1) plaintiff mailed "the sum of approximately $34.56" to defendant prior to March 1, 1966; (2) which was received by defendant prior to March 1, 1966; (3) that defendant did not cancel the policy in question "pursuant to the notice of cancellation"; and (4) answered negatively, i. e., did not find from a preponderance of the evidence, that defendant "reinstated the insurance policy in question."

The court overruled defendant's motion for judgment non obstante veredicto and entered judgment for the plaintiff. The motion for new trial provides proper bases for a discussion of the several points raised upon the appeal.

■ ■ Plaintiff's right to recover rests upon the contract or policy of insurance, and the insurer's general denial put in issue all of the material facts except those which are required to be denied under oath. Aetna Insurance Company v. Klein, 160 Tex. 61, 325 S.W.2d 376, 378 (1959). Execution and delivery of the policy was not denied under oath and, under the pro-

visions of Rule 93, Texas Rules of Civil Procedure, the policy would have been admissible in evidence without proving the execution and delivery thereof. But the rider upon which plaintiff *recovered* was but a part of the basic policy upon which the plaintiff sued. Plaintiff contends that this rider, dated March 11, 1966, recognized the continuing vitality of the policy and coverage upon the GTO automobile, yet the rider itself, offered by the plaintiff, says that it is a part of the policy, the words being: "This endorsement forms a part of the policy to which attached."

■ In Wann v. Metropolitan Life Ins. Co., 41 S.W.2d 50, 53 (Tex.Com.App., 1931, holdings approved), the court said, "[W]here an instrument refers in specific terms to another instrument in such a way as to show a clear intention to make it a part of the contract, *both instruments must be introduced in evidence before a recovery can be had thereunder.*" (Emphasis supplied.) The rider dated March 11, 1966, did not and does not entitle plaintiff to a recovery upon a policy which was not offered in evidence.

■ Another equally serious question is presented when we consider the question of cancellation of the underlying policy originally issued to plaintiff. Defendant pleaded cancellation and our record shows that the notice of cancellation, after mentioning by number the specific policy upon which plaintiff declared, contained these words:

"The company designated as payee in the premium note elects to cancel the policy or policies designated in 'Schedule of policies included in premium payment plan' because of non-payment of the latest installment.

"Notice is hereby given that such cancellation shall become effective 3-01-66. Any return premium will be applied to reduce the unpaid balance of the note. Any excess, if not tendered herewith, will be remitted upon demand."

As noted earlier, plaintiff stipulated that he received this notice of cancellation sometime between its date, February 17, 1966, and March 1, 1966, the effective date thereof. No contention is made, as we understand the briefs of the parties, that a new policy was issued; instead, as we understand plaintiff's contentions, the issuance of the rider by Houseman on March 11, 1966, changing the vehicle described from a Pontiac Tempest to a Pontiac GTO amounted to a reinstatement of the policy. Yet the jury found in the face of this uncontradicted evidence that the defendant did not cancel the policy. The no evidence point of the defendant attacking this essential finding is sustained.

■ The jury failed to find that the policy was reinstated. Cf. C. & R. Transport, Inc. v. Campbell, 406 S.W.2d 191, 194 (Tex.1966). The policy having been cancelled by the defendant insurer, the plaintiff labored under the burden of establishing contractual coverage of his automobile by defendant. Having failed so to convince the jury of this essential fact, he did not establish his cause of action and judgment was erroneously entered allowing a recovery.

■■ Moreover, the contract between the parties having been terminated by the act of cancellation, liability upon the policy could be imposed only upon a showing by plaintiff that a new policy had been issued or the former policy reinstated. It has been said upon several occasions that where an insurance policy becomes void, it cannot be reinstated except by a waiver on the part of the insurance company. See London Assur. Corporation v. Dean, 281 S.W. 624, 626 (Tex.Civ.App., Waco, 1926, error ref.), and cases therein cited. There was not even a pleading of waiver or estoppel upon the part ·of the defendant in the case at bar; and, of course, plaintiff requested no issues submitting this theory to the jury. Cf. Glens Falls Insurance Co. v. Peters, 386 S.W.2d 529, 532 (Tex.1965).

■ This brings us to the question as to what judgment should be entered by this Court. The trial court entered a judgment for the defendant but we have found reversible error therein. Our problem is whether to render judgment for the defendant or to order a remand of the cause to the trial court in the interest of justice. Ordinarily, when a no evidence point is sustained, we are required to render the judgment which the trial court should have rendered, one of rendition rather than remand. Calvert, " 'No Evidence,' and 'Insufficient Evidence' Points of Error," 38 Tex.Law Rev. 361, 366 (1960); Rule 434.

■■ Usually, a case is remanded in the interest of justice when there has been a change in the basic law between the trial and the appellate court action. Scott v. Liebman, 404 S.W.2d 288, 294 (Tex.1966). Another example of such remand in the interest of justice is where the case has not been fully developed because tried upon the wrong theory. Southwestern Motor Transport Co. v. Valley Weathermakers, Inc., 427 S.W.2d 597, 605 (Tex.1968).

■■ However, the rule is not invariably applied and this Court has a wide discretion in determining whether or not a case should be remanded for a new trial after reversal. Texas Sling Company v. Emanuel, 431 S.W.2d 538, 541 (Tex.1968). Having carefully reviewed this confused record, we are of the opinion that the cause should be remanded for a new trial in the interest of justice. It is so ordered.

The remand shall be as to plaintiff and defendant insurance company only; the judgment in favor of Houseman not having been appealed, is now final. This Court assumes that the parties will amend their pleadings so as to state the issues upon which each relies in such manner as to enable the trial court to prepare and submit to the jury the questions of fact which may be raised by the pleadings and the evidence.

Reversed and remanded.