**Sandra K. THORNHILL,**
**et al., Appellants,**

**v.**

**RONNIE'S I–45 TRUCK STOP,**
**INC., et al., Appellees.**

**No. 09–94–236 CV.**

Court of Appeals of Texas,
Beaumont.

May 1, 1997.

Robert D. Rapp, Mandell & Wright, H. Victor Thomas, Bennett, Brocks, Baker & Lange, Houston, for appellants.

Joseph J. Naples, III, Russell Serafin, Vinson & Elkins, Ciano Pasta, Howard R. King, John Engvall, Jr., Funderburk & Funderburk, Randy Donato, Donato & Associates, Houston, Guy E. Hopkins, Guy E. Hopkins & Associates, M. Kaye Applewhite, Assistant County Attorney, Conroe, S. Ronald Keister, Assistant Attorney General, Austin, for appellees.

Before BURGESS, STOVER and CARR,* JJ.

## OPINION

CARR (Assigned), Justice.

This is an appeal from a judgment n.o.v. in a premises liability case based on a wrongful death and survival action after the deaths of George Thornhill and Dale Ross [1] in a motel fire at Ronnie's I–45 Truck Stop in Spring, Texas.

A jury found,[2] among other things, that: (1) the first lien holder, appellee, Allegheny International Credit Corporation, ("AICC") was a possessor of the motel whose negligence in failing to remedy numerous fire hazards was a proximate cause of the deaths and the surviving families' injuries; (2) appellee State Fire Marshal's negligence in failing to have the fire hazards corrected or to close the motel was a proximate cause of the deaths and injuries; and (3) appellants suffered damages in the total amount of $4,350,-000.

AICC moved to have the trial court disregard the jury finding that it was a "possessor" of the motel. The State Fire Marshal moved to have the trial court disregard the adverse liability jury findings on the basis of no duty, no evidence and/or insufficient evidence, and sovereign immunity. The trial court granted both AICC's and the State Fire Marshal's motions and entered a take-nothing judgment in favor of AICC and the State Fire Marshal.

Appellants now bring this appeal which presents us with separate issues concerning the State Fire Marshal and AICC.

The trial evidence in our record can be summarized as follows:

Ronnie's I–45 Truck Stop was a motel in Spring, Texas. On April 26, 1987, a fire destroyed the motel. George Thornhill, 34, and Dale Ross, 41, were guests of the motel and were killed in the blaze.

David Glassel built and owned and operated the motel complex where the fire occurred. Glassel was an officer and a director. Glassel borrowed approximately $15,000,000 from AICC to finance the business. The loans were secured by a mortgage on the motel and other property.

Glassel first defaulted on the loans in 1985, approximately two years before the fire. Glassel remained in continuous default from

---

*The Honorable Ron Carr, sitting by assignment pursuant to Tex.Gov't Code Ann. § 74.003(b) (Vernon 1988).

1. George Thornhill was survived by his wife, Sandra, and their four children. Dale Ross was survived by his two sons and his mother.

2. The jury apportioned negligence findings among the defendants as follows: The alleged arsonist, Frederick Joseph Bixenmann 50%; AICC 19%; Operator David Glassel 19%; Owner of Ronnie's I–45 Truck Stop, Inc. 4%; and, State Fire Marshal 8%.

March of 1986 until the April 1987 fire and AICC could have foreclosed at any time. From the time the motel was built, numerous fire hazards existed which Glassel chose not to remedy. In 1986, the State Fire Marshal conducted a fire safety inspection and found needed corrections.

Glassel testified that he had no hope of ever repaying the AICC loan; that by the fall of 1986, he advised AICC that he no longer could go on and that AICC could repossess the property. Glassel told AICC that they need not even foreclose, as he would voluntarily turn over the premises.

AICC told Glassel that they wanted him to stay on and operate the motel for them. AICC had taken a security interest in Glassel's collection of antique automobiles, which were housed in a museum on the property, as additional collateral for the loans. AICC proposed that if Glassel would remain on and run the motel and complex for them, they would allow him to keep his antique automobile collection. He agreed.

According to Glassel, AICC delayed foreclosure not because it had any expectation that the loan would be repaid, but because it did not want to assume the liabilities of ownership. Glassel also testified that but for this new agreement with AICC, he would have left and the motel would have been closed down; that AICC was completely calling the shots in the operation and control of the motel, with Glassel taking directions virtually on a daily basis; that he fully advised AICC's vice president of the nature and extent of the fire hazards and violations, and informed and sent AICC's vice president copies of the Fire Marshal's letters enumerating the violations; that he requested additional funds from AICC to, among other things, correct the fire hazards, and was led to believe by AICC that funding would be forthcoming.

At the time of the fire, Ronnie's was in bankruptcy. AICC's trial position was that Ronnie's operated the hotel as a debtor-in-possession; that the parties had no agreements other than the loan agreements; and, that AICC's sole business and relationship with Glassel and Ronnie's was that of a lender.

At the time of the fire the State Fire Marshal's office was an entity created by the Legislature which was under the administrative control of the State Board of Insurance.

On June 2 and 3, 1986, State Fire Safety Inspector, J.O. Lewis, conducted a fire safety inspection. He noted four statutory violations throughout the commercial complex: 1) the absence of a "No Smoking, Stop Engine" sign at the fuel pumps; 2) smoke detectors missing in some of the rooms; 3) interior stair cases not completely enclosed; and, 4) fire escapes constructed of wood. He also noted thirty-eight (38) discrepancies or conditions not in compliance with National Fire Protection Association (NFPA) recommendations. In addition, the report concluded that "everything above the first floor of the Antique Car Building and the fourth floor of the Old Hotel Building" not be utilized. The report was forwarded to Glassel on June 5, 1986.

On June 9, 1986, Inspector Lewis prepared a memo directed to Vernon Ray, Statewide Supervisor of the Inspection Program, and Regional Manager Mark Cheney "recommend[ing] the immediate closing of parts of this facility until such hazards are corrected."

On June 11, 1986, Regional Manager Cheney prepared a memo directed to Vernon Ray, Statewide Supervisor of the Fire Safety Inspection Program in which Cheney concluded by saying:

> In the event any loss of life or injury occurs on or after June 9, 1986, we want it to be recorded that it was recommended that the aforementioned business be closed and not used until all hazards were corrected.

### State Fire Marshal Liability

The dispositive issues presented regarding the State Fire Marshal's liability are whether or not:

(1) information contained in the State Fire Marshal's written inspection reports and memoranda constitutes tangible personal property within the meaning of Section 101.021(2) of the Texas Tort Claims Act;

(2) the State Fire Marshal has waived on appeal its governmental immunity legal argument by not presenting such argument to the trial court; and

(3) we should either (a) impose liability on the State Fire Marshal because, under the facts of this case, its governmental immunity has been waived under Texas Tort Claims Act Section 101.021(2) wherein a governmental unit is liable for death caused by a "condition of real property" or (b) accept appellants' invitation to remand, in the interest of justice, their "condition of real property" claim.

For the following reasons, we answer the first three issues in the negative and decline appellants' invitation.

*Tangible Personal Property Issue*

At trial, appellants presented evidence that after inspection of the motel, employees of the State Fire Marshal issued internal reports finding numerous state fire code violations and recommending that action be taken to close the motel. Appellants also presented evidence that the State Fire Marshal, in spite of these reports, failed to take any legal action to penalize the owner of the motel for such violations or to obtain an order to close the premises pursuant to its authority under Tex.Ins.Code Ann. § 5.44 (Vernon 1981) (repealed 1987).

■ The State Fire Marshal is generally immune from liability unless the requirements of Tex.Civ.Prac. & Rem.Code Ann. § 101.021 (Vernon 1986), entitled "Governmental Liability" are met. It provides in relevant part as follows:

A governmental unit in the state is liable for:

(2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

To meet the requirements of Section 101.021, appellants submitted Question No. 7 to the jury, which states in part as follows:

Do you find from a preponderance of the evidence that the State Fire Marshal was negligent, and that such negligence, if any, was caused by the use or condition of tangible personal property which was a proximate cause of the injury in question?

The term "use" as used herein means to put or bring into action or service; to employ for or apply to a given purpose.

In answering this question, the tangible personal property is the State Fire Marshal's use or misuse of State Fire Marshal inspection reports and memoranda generated by their personnel.

The jury answered this question in the affirmative, and thus, found that the State Fire Marshal's use or misuse of inspection reports and memoranda was a proximate cause of the injury in question.

■ Under certain appellate decisions interpreting Section 101.021 that existed at the time of trial, the jury finding was sufficient to impose liability on the State Fire Marshal under the Texas Tort Claims Act. *See Texas DMHMR v. Petty,* 848 S.W.2d 680, 683–84 (Tex.1992); *University of Texas Medical Branch at Galveston v. York,* 808 S.W.2d 106 (Tex.App.—Houston [1st Dist.] 1991), *rev'd,* 871 S.W.2d 175 (Tex.1994); *City of Houston v. Arney,* 680 S.W.2d 867, 874 (Tex.App.—Houston [1st Dist.] 1984), *rev'd,* 871 S.W.2d 175 (Tex.1994).

However, there was also authority which indicated that the use or misuse of written reports did not constitute the "use of tangible personal property" within the meaning of Section 101.021. *See Eakle v. Texas Dept. of Human Services,* 815 S.W.2d 869, 873 (Tex. App.—Austin 1991, writ denied); *Montoya v. John Peter Smith Hosp.,* 760 S.W.2d 361, 364 (Tex.App.—Fort Worth 1988, writ denied); *Russell v. Texas Dept. of Human Resources,* 746 S.W.2d 510, 513 (Tex.App.—Texarkana 1988, writ denied).

The split of authority concerning this issue was settled in *University of Texas Medical Branch v. York,* 871 S.W.2d 175, 178–79 (Tex. 1994). In *York,* the supreme court stated:

While the paper on which doctors and nurses may record information about a patient's condition is tangible in that paper can be seen and touched, information itself is an abstract concept, lacking corporeal, physical, or palpable qualities. Informa-

tion thus, is intangible; the fact that information is recorded in writing does not render the information tangible property. *See also Dallas County v. Harper*, 913 S.W.2d 207 (Tex.1995).

Following *York*, we hold information contained in the State Fire Marshal's inspection records and memoranda do not constitute tangible property within the meaning of the Texas Tort Claims Act.

### Waiver

Appellants contend that the State Fire Marshal has waived on appeal its governmental immunity based on its use or misuse of inspection reports and memoranda because such argument was not presented to the trial court by any motion to disregard the jury's answer to Question 7 or in its motion for judgment n.o.v.

■ However, the record affirmatively reflects that the State Fire Marshal specifically objected to the submission of the issue and to the jury being instructed to consider "inspection reports and memoranda" as tangible personal property:

> The State objects to the submission of this question as the inspection reports and memoranda are not tangible personal property under the Tort Claims Act.

Such objection is sufficient to preserve this point of error for appeal under TEX.R.CIV.P. 274. *Cecil v. Smith*, 804 S.W.2d 509 (Tex. 1991); *Wright Way Constr. Co. v. Harlingen Mall Co.*, 799 S.W.2d 415, 418 (Tex.App.— Corpus Christi 1990, writ denied); *American Nat. Ins. Co. v. Tri–Cities Constr., Inc.*, 551 S.W.2d 106, 109 (Tex.Civ.App.—Houston [1st Dist.] 1977, no writ). A motion for new trial is not required under TEX.R.CIV.P. 324 to preserve this jury submission error for appeal.

■ Furthermore, motions to disregard jury findings and motions for judgment non obstante veredicto are not proper methods for preserving issues of jury submission other than the issues alleging no support in the evidence. In *Dayton Hudson Corp. v. Altus*, 715 S.W.2d 670, 675 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.), *cert. denied*, 481

U.S. 1073, 107 S.Ct. 2471, 96 L.Ed.2d 364 (1987) the Court states:

> The appellant also contends that it raised this issue in its motion to disregard findings on special issues and in its motion for judgment non obstante veredicto. This is not the proper method for preserving error regarding the submission of special issues. Unless there is an agreement between the parties and the court to relax the rules of civil procedure, the proper time to make objections to the court's charge is before the court has submitted the charge to the jury. TEX.R.CIV.P. 274, 279.

*See also Tubb v. Bartlett*, 862 S.W.2d 740, 748 (Tex.App.—El Paso 1993, writ denied).

■ TEX.R.CIV.P. 301 specifically requires a motion and reasonable notice to disregard a jury finding based upon no evidence grounds; however, such is not required when the point of error alleged is one other than no evidence. Furthermore, Rule 301 provides "that upon motion and reasonable notice, the Court may render judgment non obstante veredicto if a directed verdict would have been proper...." Therefore, as the improper submission here complained of is not an evidentiary issue and could not have been raised in motion for a directed verdict, the appellees were not required to raise this issue in their Motion for judgment n.o.v. The State Fire Marshal's cross-point number 1 alleges that the trial court, over prior objection, improperly instructed the jury that "inspection reports and memoranda" were tangible personal property. As this is not an issue based upon no evidence, the State Fire Marshal may properly raise the *York* issue by cross-point in their appeal in accordance with TEX.R.CIV.P. 324(c), which states that "the appellee may bring forward by cross-point contained in his brief filed in the Court of Appeals any ground which would have vitiated the verdict or would have prevented an affirmance of the judgment had one been rendered by the trial court in harmony with the verdict. *See Responsive Terminal Systems, Inc. v. Boy Scouts of America*, 774 S.W.2d 666 (Tex.1989).

We hold the State Fire Marshal has not waived its governmental immunity argument.

*Condition of Real Property*

Appellants next argue that because the evidence establishes as a matter of law that the governmental immunity of the State Fire Marshal has been waived under the alternate provision of Section 101.021(2) that a governmental unit is liable for death caused by a "condition of real property", i.e., the motel, we should reverse and render judgment in favor of appellants.

First, we find that the evidence was disputed and the appellants requested no findings from the trial court or jury concerning the issue and have waived any such argument. *See Mount Pleasant Indep. Sch. Dist. v. Lindburg,* 766 S.W.2d 208 (Tex.1989).

■ Secondly, the property listed by appellants was not "used" by an employee of the Fire Marshal's office; therefore, there is no waiver of sovereign immunity in accordance with *LeLeaux v. Hamshire–Fannett Sch. Dist.,* 835 S.W.2d 49 (Tex.1992). Furthermore, the real property was not owned, occupied or controlled by the State Fire Marshal, nor did the State Fire Marshal create the dangerous condition; therefore, a private person in the position of the government would not be liable under the circumstances of this case, and sovereign immunity was not waived. *City of Denton v. Page,* 701 S.W.2d 831 (Tex.1986).

In the alternative, appellants invite this Court, in the interest of justice, to remand their claim against the State Fire Marshal for a new trial so that it might have a jury determine whether the deaths in question were caused by a "condition of real property."

■ Usually, a case is remanded in the interest of justice when: (1) there has been a change in the basic law between the trial and appellate court action, or (2) the case was tried upon the wrong legal theory. *Hartford Accident & Indem. Co. v. Parrott,* 486 S.W.2d 405, 408 (Tex.Civ.App.—Beaumont 1972, no writ).

However, in the interest of judicial economy, we decline appellants' invitation because of the unlikelihood of appellants prevailing at retrial on a "condition of real property" theo-

ry for the reasons stated in *LeLeaux* and *Page.*

Appellants' third and fourth points of error are denied. The State Fire Marshal's first cross-point is sustained. We need not address the State Fire Marshal's second cross-point.

*AICC Liability*

The dispositive issues presented in appellants' first point of error and AICC's cross-points two and three regarding AICC's liability are whether or not:

(1) a lender [AICC], which has a mortgage interest that is in default, may be a "possessor" within the meaning of Section 328E of the Restatement (Second) of Torts if the lendor exercises control over the property;

(2) there is any evidence that AICC was a Section 328E(a) "possessor" of the motel; and,

(3) the lessee's [Ronnie's] 11 U.S.C. § 362 bankruptcy stay prevents as a matter of law AICC being a Section 328E(a) "possessor" of the motel. We answer the first two issues in the affirmative and the third issue in the negative.

Other dispositive issues relate to damages [AICC's cross-point one] and admission of evidence [AICC's cross-point four and five].

*"Possessor" Issues*

"Possessor" was defined for the jury in Question No. 4 according to the RESTATE-MENT (SECOND) OF TORTS, § 328E (1965), as follows:

■ A **possessor** of land is

(a) a person who is in occupation of the land with intent to control it or

(b) a person who has been in occupation of land with intent to control it, if no other person has subsequently occupied it with intent to control it, or

(c) a person who is entitled to immediate occupation of the land, if no other person is in possession under Clauses (a) and (b).

The possessor or occupier of premises has been interpreted by Texas courts to mean

the party in *control* of the premises. *Wal–Mart Stores, Inc. v. Alexander,* 868 S.W.2d 322, 324 (Tex.1993); *Howe v. Kroger Co.,* 598 S.W.2d 929, 930 (Tex.Civ.App.—Dallas 1980, no writ). The critical inquiry in determining whether a party is a "possessor" as defined by Section 328E "does not focus on occupancy, but on control over the premises." *Gunn v. Harris Methodist Affiliated Hosp.,* 887 S.W.2d 248, 251 (Tex.App.—Fort Worth 1994, writ denied). In the context of Section 328E, "control" is defined as "the power or authority to manage, direct, superintend, restrict, regulate, govern, administer, or oversee." *Id.* at 252.

The holder of legal title to the premises is not necessarily the "possessor" of the premises. *Bryan v. Dockery,* 788 S.W.2d 447, 450 (Tex.App.—Houston [1st Dist.] 1990, no writ). A party is a possessor if he exercises control over the premises, regardless of whether the control is rightful between the possessor and some third person. *Wal–Mart Stores,* 868 S.W.2d at 324. Comment "a" to Section 328E clarifies that: "The important thing in the law of torts is the possession, and not whether it is or is not rightful as between the possessor and some third person."

The Supreme Court has recognized that a person who is given control of the premises by the owner is under the same duty as the owner to keep the premises in a safe condition. *Page,* 701 S.W.2d at 834.

At trial, the evidence was undisputed that AICC had a mortgage interest in the motel property that was in default; that unsafe fire hazards existed at the motel and were brought to the attention of the owner and AICC; and, that as a result of the motel fire the deaths of Thornhill and Ross occurred.

What was greatly disputed at trial by contradicting evidence from both sides was whether AICC exercised any control over the motel other than that of only a lender.

AICC's trial evidence was that AICC's sole business and relationship with Glassel and Ronnie's was that of a lender who only offered the mortgagee suggestions, recommendations, cooperation and consultation, all without any possessory rights before foreclo-

sure. On appeal, AICC argues that the fact that one party makes helpful suggestions to another for the mutual benefit of both does not make that party liable for the other's acts or omissions, even when those suggestions are relied upon by the other; *see Triplex Communications, Inc. v. Riley,* 900 S.W.2d 716, 719 (Tex.1995); *Mid–Continent Frgt. Lines v. Carter Publications, Inc.,* 336 S.W.2d 885, 889 (Tex.Civ.App.—Fort Worth 1960, writ ref'd); *cf. Lawson–Avila Const., Inc. v. Stoutamire,* 791 S.W.2d 584 (Tex. App.—San Antonio 1990, writ denied); the fact that one person's actions further the business interests of another does not make the latter liable for the former's actions; *Eagle Trucking Co. v. Texas Bitulithic Co.,* 590 S.W.2d 200, 213 (Tex.Civ.App.—Tyler 1979), *aff'd in part, rev'd in part on other grounds,* 612 S.W.2d 503 (Tex.1981); cooperation and consultation with the employee of another does make one liable for that employee's actions; *Franks v. Associated Air Center, Inc.,* 663 F.2d 583, 587 (5th Cir.1981); and, that there is no evidence that AICC "controlled" or was a "possessor" of the motel.

Contrary to AICC's trial evidence, Glassel, who managed and operated the motel testified that from the fall of 1986 AICC was in complete control of the motel; that he remained at the motel at the "request" of AICC solely to run the complex for AICC; and that in exchange for his staying on to manage the motel for AICC, AICC agreed to allow Glassel to keep his collection of antique cars which had been pledged as collateral for the loans held by AICC; and, that AICC "dictated what happened."

Plaintiffs' Exhibit 18 included directives from the AICC auditors on how to operate the motel and truck stop.

In determining whether the trial court erred in disregarding the jury finding that AICC was a possessor of the motel premises, the standard of review is a "no evidence standard of review." A trial court may not disregard a jury's answer that has some support in the evidence. *Harris County v. McFerren,* 788 S.W.2d 76, 78 (Tex. App.—Houston [1st Dist.] 1990, writ denied). In determining whether there is any evidence to support a jury finding, we may not

consider or rely upon evidence and inferences that are not favorable to the jury finding.

> In deciding a no evidence point, the court should consider only the evidence and reasonable inferences therefrom, which viewed in its most favorable light, supports the jury finding and must reject all evidence or reasonable inferences to the contrary. *Glover v. Texas General Indem.,* 619 S.W.2d 400 (Tex.1981). Although the Court of Appeals purported to apply this standard, in fact, it did not. On the contrary, the Court of Appeals relied upon evidence not favorable to Nasser and which supported a finding contrary to that of the jury. This evidence should have been disregarded.

*Nasser v. Security Ins. Co.,* 724 S.W.2d 17, 18 (Tex.1987). If we find any more than a scintilla of evidence that supports the jury findings, the court must uphold the finding. *Edgington v. Maddison,* 870 S.W.2d 187, 189 (Tex.App.—Houston [14th Dist.] 1994, no writ).

 With the foregoing standard of review in mind, AICC's contentions that certain portions of the record indicate that:

> (1) AICC only made suggestions to Glassel and not orders;
>
> (2) Glassel contradicted his statement that AICC owned the property and had the right to profits; and
>
> (3) AICC rejected Glassel's proposal that AICC take possession of the property and then have Glassel operate the property as AICC's manager, cannot be considered by this Court under the applicable "no evidence standard of review" which allows only consideration of evidence and inferences that support the jury findings.

Generally, each side vigorously presented evidence in support of the proposition that AICC was or was not in control of the motel and its operations. The record reflects a number of instances of conflicting testimony which required resolution of credibility issues or the determination of the context in which a particular statement was made. These are decisions within the province of the factfinder.

After reviewing the evidence in the record in the light most favorable to the jury finding that AICC was a possessor of the motel premises and indulging every reasonable inference in the jury's favor, we find that there is some evidence that is more than a scintilla of evidence to support the affirmative jury finding.

AICC's cross-points two and three also contend that the evidence is factually insufficient to support the jury finding that AICC was a possessor of the premises or that AICC controlled Ronnie's business.

When reviewing an insufficient evidence point, we consider and weigh all the evidence; and we set aside the verdict only if it so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986); *Dyson v. Olin Corp.,* 692 S.W.2d 456, 457 (Tex.1985).

After reviewing the entire record, we find that there is sufficient evidence to support the jury findings. Accordingly, we will not substitute our judgment for that of the jury.

AICC cites numerous decisions which address the issue of whether the evidence was sufficient to show the existence of an employment or agency relationship, such as *Mid–Continent Freight Lines v. Carter Publications, Inc.,* 336 S.W.2d 885 (Tex.Civ.App.—Fort Worth 1960, writ ref'd). We conclude these decisions have no application to this case, because none of them are premises liability cases. We hold (1) Section 328E does not require appellants to prove that Glassel was the employee or agent of AICC in order to show that AICC exercised sufficient control over the motel premises to be a possessor and (2) it is enough to show that Glassel was operating the motel premises according to the instructions of AICC to show that AICC was controlling the premises under 328E.

At oral argument, AICC contended for the first time that appellants were required to obtain a jury finding that an agency relationship existed between AICC and David Glassel before AICC could be held liable as a possessor of the motel. However, AICC did not object to Jury Question 4, which asked

whether AICC was a possessor of the motel, and it did not make this argument in any of its post verdict motions or in their appellee's brief. Because AICC never presented this objection to the trial court, it has been waived. Tex.R.App.P. 52(a).

AICC argues that a party cannot be a possessor under Section 328E unless it controls the access of third persons to the property, citing *Prestwood v. Taylor*, 728 S.W.2d 455 (Tex.App.—Austin 1987, writ ref'd n.r.e.). *Prestwood* did not state that controlling access is the determinative test of whether someone is a possessor under Section 328E. *Prestwood* merely recognized that controlling access to the premises is some evidence of the exercise of control.

In *Gunn v. Harris Methodist Affiliated Hosp.*, 887 S.W.2d 248, 252 (Tex.App.—Fort Worth 1994, writ denied), the court held that in the context of Section 328E, *control* is defined as "the power or authority to manage, direct, superintend, restrict, regulate, govern, administer, or oversee." Thus, while control of access to the premises may constitute some evidence of control of the premises, the primary test is whether the defendant is managing or directing the operations of the premises.

Additionally, AICC's contention that physical occupancy is required to be a possessor under Section 328E is not supported by the case law. In *Gunn*, 887 S.W.2d at 251, the court recognized that under Texas case law, the critical inquiry in determining whether a party is a "possessor" as defined by Section 328E "does not focus on *occupancy*, but on *control* of the premises."

■ AICC contends that the bankruptcy stay prevented it from being a possessor at the time of the fire. However, it was the exercise of control by AICC that makes AICC a "possessor". As previously discussed, in *Wal–Mart Stores, Inc.*, 868 S.W.2d at 324, the Supreme Court held that a possessor of land includes a person in occupation or control of land regardless of whether the occupation or control is rightful between the possessor and some third person. In *Orthmann v. Apple River Campground, Inc.*, 757 F.2d 909 (7th Cir.1985), the Seventh Circuit has recognized that a land owner who treats

his neighbor's property as part of his own, even though he has no legal right to do so, is a possessor under Section 328E, and is responsible for the safety of the property it wrongfully possesses. The court stated that lack of formal title is immaterial and that whoever controls the land is responsible. *Id.* at 914. The court held that a duty to keep the premises safe arises even if the exercise of control is unlawful. To illustrate this point, the court gave a hypothetical example. An amusement park builds a parking lot encroaching on a neighbor's land. A customer of the amusement park is injured by a pothole in the part of the lot that the amusement park actually did not own or have any right to occupy. The amusement park could not escape liability by arguing that it did not own or have any legal right to the property where the accident occurred. *Id.* at 914.

In addition, there is direct evidence that AICC continued to control the motel premises through Glassel just as it did before the bankruptcy. Glassel testified that after Ronnie's bankruptcy filing in March 1986, he was managing the motel premises for AICC: *"When you're talking off into the March and later, in 1987, it was their baby all the way. . . . I was running it for them."* Also, AICC was the one that instructed Glassel to put Ronnie's into bankruptcy to serve AICC's purpose of keeping the motel open and there is no evidence that Glassel stopped taking orders from AICC after bankruptcy was filed.

The fact that AICC had not yet foreclosed on the motel at the time of the fire did not preclude its legal status as a possessor. A party may be a possessor without any ownership or possessory interest in the premises. The only necessary element for being a "possessor" is that the party exercise some degree of control over the premises. In *Western Hills Bowling Center, Inc. v. Hartford Fire Ins. Co.*, 412 F.2d 563 (5th Cir.1969), cited by the Texas Supreme Court in *Page*, 701 S.W.2d at 835, the plaintiff's bowling alley was partially destroyed by fire while the property was insured by the defendant. The defendant insurance company undertook an investigation of the original fire. During the investigation, vandals entered the build-

ing, set a second fire, and totally destroyed the bowling alley. The insurance company was held liable for the damage caused by the second fire because it took control of the bowling alley during its investigation. *Western Hills*, 412 F.2d at 565. The insurance company, which had *no ownership interest* in the bowling alley, was held liable as a possessor because it exercised control over the premises when the fire occurred.

Likewise, even though AICC may not have had a legal right to control the motel absent foreclosure, its actual exercise of control with the consent of Glassel, made AICC a possessor under Texas law. As a possessor, AICC owed a duty to keep the motel in a safe condition. *Wal–Mart Stores, Inc.*, 868 S.W.2d at 324.

In *Wal–Mart*, Wal–Mart argued that the lease expressly imposed on the lessor a duty to maintain the parking lot and that Wal–Mart's installation of the ramp did not relieve the lessor of its duty. The Supreme Court held that even if the lessor did owe a duty of care to Mrs. Alexander, Wal–Mart's duty, based on its actual control of the ramp, would remain. *Id.* at 325. The necessary implications of this holding are: (1) that more than one party may simultaneously possess a premises; and (2) that every party who exercises control over the premises has a duty to use ordinary care to keep the premises in a safe condition.

Accordingly, even if Glassel or Ronnie's I–45 Truck Stop, Inc. were a possessor of the motel, the jury was not precluded from finding that AICC was also a possessor of the motel by virtue of its control.

AICC also argues that its judgment n.o.v. should be affirmed because appellants have failed to challenge on appeal the trial court's disregard of the Question No. 5 jury finding that AICC's negligence proximately caused damages to appellants. We disagree.

In its motion for judgment n.o.v., AICC only moved to disregard the jury's answer to Question No. 5 on the ground that for various reasons it owed no duty to the appellants. We find each of the reasons in AICC's motion for judgment n.o.v. is fully addressed by appellants' argument.

The law does not require appellants to address on appeal other potential grounds for judgment n.o.v. that were never presented to the trial court. A motion to disregard a jury finding must be directed to the objectionable issue and *point out the reasons* why such issue should be disregarded. *St. Paul Fire & Marine Ins. v. Bjornson*, 831 S.W.2d 366, 369 (Tex.App.—Tyler 1992, no writ); *Dewberry v. McBride*, 634 S.W.2d 53, 55 (Tex.App.—Beaumont 1982, no writ).

Lastly, we reject AICC's policy argument that appellants' appeal advocates the creation of a new form of lender liability in Texas, i.e., a lender's liability for premises defects on its unforeclosed mortgaged property, that a decision in favor of appellants will send shock waves through the Texas financial community because it will negatively affect the decision of any lender contemplating loaning money to Texas business; or the same will hold true for existing lender-borrower relationships.

AICC is not liable because it was a lender that failed to foreclose on its secured property, but is liable because of the control it exercised over the motel premises with full knowledge of the multitude of fire code violations that existed at the motel. In most situations, a lender does not exercise the kind of control that AICC did over its secured property until after foreclosure. It is only in the rare instance where the lender exercises a high degree of control over the premises prior to the foreclosure, that a lender will be found to be a possessor under Section 328E of the Restatement (Second) of Torts. A judgment on the jury's verdict will not expand or create any new liability on the part of lenders that did not previously exist under Section 328E.

Also awarding judgment on the jury findings will not impose a duty on AICC or other lenders to foreclose. Under the loan agreements, AICC was authorized to correct any deficiencies in the premises at its sole discretion and to require Glassel to pay the costs of repair. Thus, AICC had a right to correct the fire hazards even in the absence of foreclosure.

But regardless of whether AICC had any contractual right to make the premises safe, it had such a duty under Section 328E because of the control it exercised over it. Section 328E does not require lenders to foreclose, but it does impose liability on them if they exercise control over the premises and fail to make it safe. AICC's liability here is not based on lendor status but rather possessor status.

For the reasons stated, appellants' first point of error is granted, AICC's cross-points two and three are denied, and we need not address appellants' second point of error.

AICC's cross-point one contends there is no legally and factually sufficient evidence to support the jury's award of damages for loss of inheritance.

The jury found loss of inheritance damages in the total amount of $500,000, which consisted of an award of $200,000 to Mrs. Thornhill and $50,000 to each of the children of Mr. Thornhill and Mr. Ross. Appellees have not challenged on appeal any of the other damages found by the jury which total $3,850,000.

■■■ Loss of inheritance damages has been defined by the Texas Supreme Court as follows:

> We define loss of inheritance damages in Texas as the present value that the deceased, in reasonable probability, would have added to the estate and left at natural death to the statutory wrongful death beneficiaries but for the wrongful act causing the premature death.

*Yowell v. Piper Aircraft Corp.*, 703 S.W.2d 630, 633 (Tex.1986). Both the Texas Supreme Court and intermediate appellate courts have found the same type of evidence that was presented in this case to be both legally and factually sufficient to support the jury findings of loss of inheritance damages.

In *Yowell*, Piper argued that no evidence supported loss of inheritance damages. The Supreme Court overruled this point stating:

> The plaintiffs introduced evidence as to each of the decedents' salaries, expected raises, expected promotions and salary increases, earning capacities, enforced savings through pension plans, spending habits, age, health, and relationship with the

wrongful death beneficiaries. The plaintiffs also produced evidence of the age and health of the wrongful death beneficiaries. We hold that adequate pleadings and some evidence support the jury's finding of loss of inheritance damages.

*Id.* at 634.

In *Lopez v. City Towing Associates, Inc.*, 754 S.W.2d 254, 265 (Tex.App.—San Antonio 1988, writ denied), the defendants asserted that there was no evidence to support the jury's award of loss of inheritance damages, because plaintiffs failed to introduce any testimony of the probability that Mrs. Lopez would have accumulated assets and would have left this accumulation to the statutory beneficiaries. The court of appeals rejected this argument stating:

> On the contrary, the record indicates that Mrs. Lopez had worked ten years in a day care center prior to the accident and had only quit her job one month before the accident. During her time at the day care center Mrs. Lopez obtained her G.E.D. and was promoted to teacher's aide and then to a teacher's position. Testimony indicated that Mrs. Lopez wanted to obtain a college degree so that she could return to work as an elementary school teacher or as a substitute teacher. There was testimony that Mrs. Lopez' earnings were not used to support the family, but were used to provide extra things for the family, primarily for the children. Finally, there was extensive testimony of Mrs. Lopez' close and loving relationship with the members of her family. We hold that there is some evidence to support the jury's findings of loss of inheritance damages.

*Lopez*, 754 S.W.2d at 265.

In this case, appellants' economist testified as to Mr. Thornhill's and Mr. Ross's (1) past and future earning capacity; (2) fringe benefits; and (3) projected personal consumption. The economist provided a detailed analysis showing all manner of specific economic losses, including: lost earnings, past and future; lost fringe benefits, past and future; loss of household services, and the likely amount of surplus after personal consumption from which an estate could be built and left to the

appellants. Also there was evidence presented of the great love that existed between the decedents and their families which is some evidence that they intended to leave their families an inheritance.

We find there is some evidence and sufficient evidence to support the jury's award of loss of inheritance damages. AICC's first cross-point is denied.

AICC's cross-points four and five complain of improper admission of evidence, expert testimony and exhibits containing references to insurance.

### Expert Testimony

■ In Question 4, the jury was asked whether AICC was a possessor of the motel. Possessor was defined as a person who is in occupation of the property with intent to control it. Thus, whether AICC was in control of the motel was an ultimate issue of fact that appellants' expert Theodore Strybosch was properly permitted to testify about. TEX.R.CIV.EVID. 704 provides that testimony in the form of an opinion is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.

■ Strybosch's testimony that because AICC controlled the premises, it had a responsibility to do something about the fire hazards is harmless error because that is a correct statement of the law. *Wal–Mart Stores,* 868 S.W.2d at 324; *Howe,* 598 S.W.2d at 930 (Tex.Civ.App.—Dallas 1980, no writ).

■ In any event, any error by the trial court in admitting Strybosch's testimony is not reversible if it is merely cumulative of other evidence, the admission of which AICC has not challenged on appeal. *See Mancorp., Inc. v. Culpepper,* 802 S.W.2d 226, 230 (Tex. 1990); *Keene Corp. v. Rogers,* 863 S.W.2d 168, 179 (Tex.App.—Texarkana 1993, writ stayed).

The essence of Strybosch's testimony was that AICC was in control of the motel premises, and therefore had a responsibility to correct the fire hazards. He also testified that AICC had a right under the loan agreement to correct the fire hazards.

This is not materially different than the testimony that was given by Fred Babb, the treasurer of AI, the parent of AICC. Babb testified that AICC had the right under the loan agreement to possess the motel to correct the fire hazards and that AICC had a responsibility to do so because of the benefits it received by keeping the complex open. More specifically, Babb testified that AICC should have foreclosed; mandated correction of the dangerous conditions; provided fundings to make the hazardous conditions safe; or shut down the areas where the dangerous conditions existed. Babb recognized that after Glassel's default, both AICC and Glassel shared a dual responsibility to make the motel safe because of the dual benefits they were receiving by keeping the motel open under the arrangement with Glassel. He testified:

> If, if a decision were made to keep the operation running that was both in the credit corporation's interest and in their opinion in the borrower's interest. What the relative obligations are, I'm not prepared to judge.... **Correct deficiencies, certainly.** ... Dual benefits, dual responsibilities.

Mr. Babb saw AICC's duty as follows:

> I, I would have felt compelled to make a judgment to either approve the additional financing [to correct the fire hazards] or to close down the motel or to do its equivalency.

Mr. Babb's testimony, as a high ranking officer of AI, was far more harmful than the testimony of a paid expert witness. The admission of Mr. Strybosch's testimony cannot be considered reversible error, because it did not probably cause an improper verdict. TEX.R.APP.P. 81(b).

We conclude the trial court did not err in allowing into evidence the expert testimony of Strybosch concerning AICC's control and responsibilities and any error, if any, in admitting such testimony is not reversible, because it did not probably cause the rendition of an improper verdict.

### Exhibits Containing References to Insurance

■ The references to insurance that AICC complains about are provisions in the

loan agreement between AICC and Glassel which required Glassel to purchase insurance for the motel. The loan agreements between the parties were clearly admissible, and their provisions concerning property insurance were also admissible to show that AICC was exercising control over the motel premises. The undisputed evidence shows that although the loan agreements required Glassel to purchase insurance, AICC purchased its own property insurance on the motel premises when Glassel failed to do so, without advising Glassel. Glassel's failure to purchase insurance on the motel was another breach of the loan agreements that gave AICC the right to immediately foreclose. The jury could infer from these facts that AICC was attempting to control the motel premises and enjoy the benefits of ownership without having to actually foreclose.

First, Tex.R.Civ.Evid. 411 only prohibits the admission of "liability insurance," not "property insurance." Thus, appellants' evidence concerning "property insurance" was admissible.

Second, Rule 411 only prohibits the admission of evidence that a person was or was not insured against liability upon the issue of whether he acted negligently or otherwise wrongfully. Rule 411 specifically states that it "does not require the exclusion of evidence of insurance against liability when offered for another issue, such as proof of agency, ownership, or *control* ..." In *Jacobini v. Hall*, 719 S.W.2d 396, 401 (Tex. App.—Fort Worth 1986, writ ref'd n.r.e.), the court of appeals noted that Rule 411 does not require the exclusion of evidence of insurance when offered for the purpose of showing agency, ownership, or control. The court held that evidence of insurance was admissible, since the main point of contention in the lawsuit was the matter of ownership of the vehicle, and the proof of insurance was relevant to show who owned the vehicle.

Rule 411 does not exclude evidence that the loan agreements required Glassel to provide insurance on the motel, because it was offered not for the purpose of showing that AICC was negligent, but to show that AICC was exercising control over the motel premises.

Additionally, the admission of the loan agreement requirements that Glassel provide property insurance did not cause AICC any harm, because such insurance did not pertain to or cover any of the losses that were suffered by the appellants. The insurance only pertained to whether either Glassel or AICC was going to receive any insurance proceeds to cover the property damage caused by the fire.

Even if the injection of insurance into a trial is error, the fact that the issue was injected into the proceeding does not automatically require reversal. *Dennis v. Hulse*, 362 S.W.2d 308, 309 (Tex.1962); *United Cab Co. v. Mason*, 775 S.W.2d 783, 786 (Tex.App.—Houston [1st Dist.] 1989, writ denied). The complaining party must show harm from any error before the judgment may be reversed. *Mason*, 775 S.W.2d at 786.

*Kenneth H. Hughes Interests, Inc. v. Westrup*, 879 S.W.2d 229, 238 (Tex.App.—Houston [1st Dist.] 1994, writ denied). In *Westrup*, appellants argued that the trial court erred in overruling their objections to both testimony and documentary evidence that showed they had liability insurance. The court of appeals did not reverse, because the appellants failed to carry their burden to show that the mention of insurance probably caused the rendition of an improper judgment. *Id.* at 238.

Likewise, the admission of the loan agreement requirements that Glassel provide insurance on the motel property is not reversible error, because it did not probably result in an improper verdict. Tex.R.App.P. 81(b). One of the purposes of the rule against admitting evidence of insurance is to avoid informing the jury that someone other than the defendant may be liable to pay the damages. Here, the objected to evidence concerned not liability insurance, but property insurance. Thus, the harm that the rule was designed to prevent does not come into play.

We find the trial court did not err by admitting into evidence exhibits containing references to property insurance of the motel.

AICC's cross-points four and five are rejected and we need not address AICC's sixth cross-point.

Judgment n.o.v. as to the State Fire Marshal is affirmed. Judgment n.o.v. as to AICC is reversed and this cause is remanded to the trial court for the sole purpose of entry of judgment on the jury award in accordance with this opinion.

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.