NO. 07-00-0461-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL C



JANUARY 31, 2002



______________________________




JOSE ZUNIGA, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 106TH DISTRICT COURT OF LYNN COUNTY;



NO. 98-2419; HONORABLE GENE DULANEY, JUDGE



_______________________________




ON MOTION FOR REHEARING



Before QUINN and REAVIS and JOHNSON, JJ.


 Appellant Jose Zuniga was convicted by a jury of manslaughter and punishment was
assessed at 20 years confinement and a fine of $10,000. By opinion dated November 19,
2001, appellant's conviction was reversed and the cause remanded to the trial court for a
new trial and the State has filed a motion for rehearing. Remaining convinced that our
original disposition was correct, we overrule the State's motion for rehearing with the
following comments.

 Although the State did not request that we reform the judgment in its brief, citing
Asberry v. State, 813 S.W.2d 526 (Tex.App.--Dallas 1991, pet. ref'd), the State now
requests that this Court reform the judgment of the trial court. The jury verdict was on the
form provided by the trial court and stated in part:

 We, the jury, find the defendant GUILTY of the offense of Manslaughter, as
charged in the indictment in Cause Number 98-2419. Count 1 par. C.


"Count 1 par. C" was handwritten and read into the record by the trial judge to the jury
before the verdict was received and while appellant was present in the courtroom.

 The verdict of a jury is its written decision of the issues submitted to them. Alston
v. State, 154 Tex. Crim. 148, 226 S.W.2d 443, 445 (1950). A verdict may not be
conditional, qualified, speculative, inconclusive or ambiguous, but must be certain,
consistent, and definite. Eads v. State, 598 S.W.2d 304, 306 (Tex.Cr.App. 1980);
Clemons v. State, 676 S.W.2d 356, 357(Tex.Cr.App. 1984); Reese v. State, 773 S.W.2d
314, 317 (Tex.Cr.App. 1989).

 In Texas, courts do not have the power to change a jury verdict unless it is with the
consent of the jury and before they have dispersed. Ex parte McIver, 586 S.W.2d 851, 854
(Tex.Cr.App. 1979); Smith v. State, 479 S.W.2d 680, 681 (Tex.Cr.App. 1972). When a jury
returns an informal or insufficient verdict, the trial judge has the duty to call the matter to
the attention of the jury and have it corrected with their consent or send them out again to
consider their verdict. Reese, 773 S.W.2d at 317. However, because the jury verdict had
already been accepted by the trial court and the jury had been discharged, the trial court
did not have and this Court does not have authority to alter the verdict. Moreover, our
authority to modify or reform a judgment is limited to those situations where a conviction
of a lesser included offense is appropriate. Bigley v. State, 865 S.W.2d 26, 27
(Tex.Cr.App. 1993); Tippitt v. State, 41 S.W.3d 316, 328 (Tex.App.--Fort Worth 2001, no
pet.).

 Although the Asberry Court reformed the judgment, it did so to add a recitation of
the defendant's use of a deadly weapon during the commission of the offense. 813
S.W.2d at 531. However, the Asberry Court did not, as suggested by the State, ignore,
disregard, or change an express portion of the jury verdict. Moreover, because the State
did not object to the receipt of the verdict or move that the jury be properly instructed and
returned to the jury room to consider their verdict, the State waived the requested relief. 
See State v. Mercado, 972 S.W.2d 75, 78 (Tex.Cr.App. 1998) (holding that notions of
procedural default apply equally to the defendant and the State).

 Next, the State challenges our holding that the evidence was factually insufficient
to support the jury verdict. Among other things, the charge required the jury to determine
that by driving his truck while having a measurable or detectable amount of alcohol in his
system, appellant's conduct was reckless and if reckless, it caused the collision. Because
appellant concedes that the evidence showed the presence of a measurable or detectable
amount of alcohol in his blood, we direct our attention to the factual sufficiency of evidence
to support the jury's determination that appellant's conduct was reckless and that his
conduct caused the collision.

 In theory, this charge could apply to cases where the level of alcohol content in the
blood of a driver of a motor vehicle was high or low. However, according to the evidence
reviewed in our original opinion appellant's blood alcohol content was low and below the
statutory level for intoxication. 

 Although the State called the driver of the pickup to testify that appellant was
attempting to pass, the State did not attempt to develop the facts to establish the cause
or causes of the accident by this driver or any other eyewitness. By its motion for
rehearing, the State emphasizes that excessive speed and illegal passing were causes of
the accident; however, we do not consider those factors for purposes of this review of the
jury verdict for the reasons set out in our original opinion. The State does not contend that
the accident was caused by appellant's failure to maintain a proper lookout or to timely
apply his brakes and none of the officers attributed these factors as possible causes. 
Although the evidence is factually sufficient to support the inference by the jury that the
presence of a detectable amount of alcohol in appellant's blood made him more prone to
commit acts of unsafe driving rendering his conduct reckless, we remain convinced that
the State's evidence was too weak, by itself, to support any inference that appellant failed
to maintain a proper lookout, failed to timely apply his brakes, or committed other acts of
unsafe driving which caused the collision. See Goodman v. State, No. 0120-00, 2001 Tex.
Crim. App. Lexis 112, *8 (Tex.Cr.App. Nov 21, 2001). 

 Accordingly, the motion for rehearing is overruled. 

 



 Don H. Reavis

 Justice



Do not publish.



curred. Indeed, that contention is addressed nowhere in her
appellate brief. This is fatal given that the trial court did not specify the particular ground
upon which it relied in granting the summary judgment. When attempting to reverse a
summary judgment when multiple grounds supporting such relief are alleged in the motion
and none are expressly mentioned by the trial court as the catalyst for its judgment, the
appellant must attack each ground on appeal. Star-Telegram, Inc. v. Doe., 915 S.W.2d
471, 473 (Tex. 1995). That is, it must illustrate why none support the trial court's judgment. 
Id. Because Puga did not address the ground involving whether she was within the scope
of her employment when the injury occurred, she did not carry her burden on appeal.

Issue Two -- Premises Liability and the Purported Existence of Fact Questions


 Next, we consider Puga's second and last issue. Through it, she asserts that
material issues of fact existed which prevented the court from granting the motion. We
overrule the issue.

 As previously mentioned, it is undisputed that Chavez did not own the property on
which Puga fell. Nevertheless, Puga argues that one who occupies property of another
may have a duty to use ordinary care to keep lands adjacent to his property in a
reasonably safe condition and that Chavez incurred that obligation viz the property on
which she fell. Admittedly, such a duty may arise. However, to the extent that it does, the
duty exists only in relation to property over which the defendant exercises actual control. 
Science Spectrum, Inc. v. Martinez, 941 S.W.2d 910, 911-12 (Tex. 1996); Wal-Mart Stores,
Inc. v. Alexander, 868 S.W.2d 322, 324 (1993). According to the Supreme Court, the
"relevant inquiry is whether the defendant assumed sufficient control over the part of the
premises that presented the alleged danger so that the defendant had the responsibility
to remedy it." County Of Cameron v. Brown, 80 S.W.3d 549, 556 (Tex. 2002). 
Furthermore, the type of control contemplated is that inherent in the ability to manage,
direct, superintend, restrict, regulate, govern, administer, or oversee the lands. See
Thornhill v. Ronnie's I-45 Truck Stop, Inc., 944 S.W.2d 780, 788 (Tex. App.--Beaumont
1997, writ dism'd by agr.) (defining the word "control" when used in relation to controlling
premises "as 'the power or authority to manage, direct, superintend, restrict, regulate,
govern, administer, or oversee'").

 Here, Puga believes that sufficient evidence of control existed because Chavez and
his employees had an "'understanding' that they park on the east side of the building which
is not owned by Chavez" and Chavez complained to the lot's owner that others were
parking in that same area. With regard to the "'understanding,'" it consisted of Chavez
stating, in his deposition, that:

 . . . I don't think I have ever in any way or another told patients where to park
--I mean my employees where to park. I think it's kind of an understanding
that they normally park on the east side of the building. [Emphasis added].


Furthermore, Puga testified that though Chavez told her to park "behind the building," he
did not instruct "her of any need to park in a certain spot behind" it. From evidence
indicating that Chavez may have told one or more of his employees where to park, one
cannot reasonably infer that Chavez exercised, attempted to exercise, or intended to
exercise control of the property on which they parked. Indeed, it would be irrational to
conclude that just because someone tells another to park on a public street that the
declarant is purporting to regulate, manage, oversee, govern, or otherwise control the
public street in a manner sufficient to obligate him to make that street safe for all who may
traverse it. Similarly irrational is the conclusion that because a mother tells her son to park
in front of a particular store at a local shopping center, the mother is controlling the lot to
which she alluded. This is no less true when an employer tells his employees to park
somewhere in a neighboring parking lot owned by someone else and apparently available
for parking. In each instance, the party directing the conduct is doing just that, directing
conduct, not exercising control over the realty on which they may eventually park. More
is needed to evince control over the property itself.

 In short, Puga is confusing access with control. That someone may have access
to property does not alone evince control of the property. If this were not true then the
logical result of equating access with control would lead to an untenable outcome. For
instance, in most claims involving premises liability, the claimant undoubtedly had access
to the premises; if not, then they most likely would not have been injured while on it. Now,
if access evinced control then one could reasonably deduce that the claimant controlled
the property which caused the injury. So, in having access to, and thus control over, the
property, it could be said that the claimant is responsible for the breach that caused his
own injuries. Surely that is not a result which a claimant would countenance.

 As to the evidence of Chavez supposedly complaining about some tenant of the
landowner parking in the lot, the hearsay testimony alluded to by Puga actually illustrates
that an employee of Chavez told the tenant to move his vehicle because it was in Chavez'
parking area. The tenant then complained to the landowner. In response, the landowner
inspected the area and told the tenant "to just tell them to move their cars, we didn't want
them over there." Absent from this excerpt, however, is any evidence illustrating who that
employee was, when the event occurred in relation to Puga's fall, on whose directive, if
any, the employee acted, whether it was within the scope of the employee's duties to do
that which he or she did, or whether the area in question was even the area in which Puga
fell. Given this lack of evidence tying Chavez to the incident or the property to the spot at
which Puga fell, one cannot reasonably infer that it connotes effort on the part of Chavez
to restrict, regulate, manage or otherwise control the property on which Puga fell.

 Finally, to the extent Puga cites Wal-Mart Stores, Inc. v. Alexander as support for
her position, we find the case inapposite. There, Alexander stumbled over a ridge at the
base of a concrete ramp leading from the parking lot to Wal-Mart's store. Though Wal-Mart had no contractual right to occupy or control the property on which the ramp was
located, it nonetheless built the ramp to facilitate access to the store. Since it built the
ramp on its own initiative and at its own expense, Wal-Mart assumed actual control over
the ramp and the area on which it lay, according to the Supreme Court. Wal-Mart Stores,
Inc. v. Alexander, 868 S.W.2d at 325. Therefore, it had the duty to cure dangerous
conditions caused by it and posed to its customers. Id. at 324-25. Here, nothing of record
suggests that Chavez built or altered the parking lot in general or the area on which Puga
fell. Nor does the evidence purport to suggest that he did anything that caused or
facilitated the dangerous condition (ice) to arise at that particular locale. So, because the
circumstances that triggered Wal-Mart's liability in Alexander are not present here,
Alexander is not dispositive of the outcome here.

 In sum, there exists no evidence of an element necessary to Puga's claim of
premises liability. That element is actual control over the property on which she fell. And,
because of this, Chavez was entitled to judgment as a matter of law. Furthermore, this
relieves us from having to address her other contentions purportedly illustrating that
summary judgment was improper. 

 Having overruled Puga's issues, we affirm the summary judgment of the trial court.


 Brian Quinn

 Justice
1. The lot owner apparently settled with Puga and is not a party to this appeal. Thus, we limit our
discussion of the causes to those asserted against Chavez.
2. According to Puga, Chavez breached his duty to provide a safe place to work by 1) failing to provide
her with a parking space free of ice and snow, 2) failing to enact a policy requiring his employees to park on
land he owned, and 3) requiring his employees "to work during icy weather when he knew or should have
known that he could not provide a parking space . . . which would allow safe access from plaintiffs [sic] vehicle
to his business."