**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

NATIONWIDE MUTUAL INSURANCE
COMPANY,
<u>Plaintiff,</u>

v.

LAFARGE CORPORATION; LAFARGE
CANADA INCORPORATED,
<u>Defendants-Appellants,</u>

and

NORTHEAST CEMENT COMPANY,
INCORPORATED; CENTRAL STATES
INDEMNITY COMPANY OF OMAHA;
INTEGRITY MUTUAL INSURANCE
COMPANY; MISSION INSURANCE

COMPANY; COLUMBIA CASUALTY
COMPANY; HIGHLANDS INSURANCE
COMPANY; UNITED STATES FIRE
INSURANCE COMPANY; HARTFORD
ACCIDENT AND INDEMNITY COMPANY;
THE NORTH RIVER INSURANCE
COMPANY; INSURANCE COMPANY OF
NORTH AMERICA; INTERNATIONAL
ATLANTINS INSURANCE COMPANY;
NORTHUMBERLAND GENERAL INSURANCE
COMPANY; SIMCOE AND ERIE GENERAL
INSURANCE COMPANY,
<u>Defendants,</u>

v.

No. 96-1389

HARTFORD CASUALTY INSURANCE
COMPANY,
Third Party Defendant-Appellee,

and

THE TRAVELERS INDEMNITY COMPANY;
PACIFIC EMPLOYERS INSURANCE
COMPANY; WALBROOK INSURANCE
COMPANY, LIMITED; BERMUDA FIRE &
MARINE INSURANCE COMPANY, LIMITED;
JOHN RICHARD YOUELL; CERTAIN
UNDERWRITING MEMBERS OF LLOYD'S,
LONDON, subscribing Policy No.
834/59498/85 and Policy No.
834/59499/85; ZURICH INTERNATIONAL
INSURANCE COMPANY, LIMITED; CNA
REINSURANCE COMPANY OF LONDON,
LIMITED; HEDDINGTON INSURANCE
COMPANY (U.K.), LIMITED; SOVEREIGN
MARINE AND GENERAL INSURANCE
COMPANY, LIMITED; TOKIO MARINE &
FIRE INSURANCE COMPANY (U.K.),
LIMITED; TAISHO MARINE AND FIRE
INSURANCE COMPANY (U.K.), LIMITED;
ALLIANZ INTERNATIONAL INSURANCE
COMPANY, LIMITED; STOREBRAND
INSURANCE COMPANY (U.K.), LIMITED;
TUREGUM INSURANCE COMPANY;
CENTURY INDEMNITY COMPANY;
GIBRALTAR CASUALTY COMPANY; TWIN
CITY FIRE INSURANCE COMPANY;
HARBOR INSURANCE COMPANY;

2

FIDELITY AND CASUALTY COMPANY OF NEW YORK; NUTMEG INSURANCE COMPANY; FIRST STATE INSURANCE COMPANY; H. S. WEAVERS UNDERWRITING AGENCY; STONEWALL INSURANCE COMPANY; TEXAS PACIFIC INDEMNITY COMPANY; EMPLOYERS INSURANCE OF WAUSAU; AMERICAN HOME ASSURANCE COMPANY; CHUBB INSURANCE COMPANY OF CANADA; ALLIANZ UNDERWRITERS INSURANCE COMPANY; LONDON GUARANTEE AND ACCIDENT COMPANY OF NEW YORK; REPUBLIC INSURANCE COMPANY; LANDMARK INSURANCE COMPANY; AETNA CASUALTY & SURETY COMPANY; CALIFORNIA UNION INSURANCE COMPANY; CERTAIN UNDERWRITERS AT LLOYD'S, LONDON; HALIFAX INSURANCE COMPANY; SCOTTISH & YORK INSURANCE COMPANY, LIMITED; THE FEDERAL INSURANCE COMPANY; ST. PAUL SURPLUS LINES INSURANCE COMPANY; LEXINGTON INSURANCE COMPANY; LAURENTIENNE GENERALE COMPAGNIE D'ASSURANCE; KANSA GENERAL INSURANCE COMPANY, LIMITED; AETNA CASUALTY OF CANADA; GUARDIAN INSURANCE COMPANY OF CANADA; LA COMPAGNIE D'ASSURANCE CONTINENTAL DU CANADA; INTERNATIONAL INSURANCE COMPANY; ZURICH INSURANCE COMPANY;

RELIANCE INSURANCE COMPANY,
INCORPORATED; ROYAL INDEMNITY
COMPANY; BOREAL PROPERTY AND
CASUALTY INSURANCE, INCORPORATED,
formerly known as Aetna Casualty of
Canada; BOREAL ASSURANCES,
INCORPORATED, formerly known as
Laurentienne Generale Compagnie
D'Assurance,
Third Party Defendants,

CIGNA INSURANCE COMPANY OF CANADA,
Party in Interest.

NATIONWIDE MUTUAL INSURANCE
COMPANY,
Plaintiff,

v.

LAFARGE CORPORATION; LAFARGE
CANADA INCORPORATED,
Defendants-Appellees,

No. 96-1453

and

NORTHEAST CEMENT COMPANY,
INCORPORATED; CENTRAL STATES
INDEMNITY COMPANY OF OMAHA;
INTEGRITY MUTUAL INSURANCE
COMPANY; MISSION INSURANCE
COMPANY; COLUMBIA CASUALTY
COMPANY; HIGHLANDS INSURANCE

4

COMPANY; UNITED STATES FIRE INSURANCE COMPANY; HARTFORD ACCIDENT AND INDEMNITY COMPANY; THE NORTH RIVER INSURANCE COMPANY; INSURANCE COMPANY OF NORTH AMERICA; INTERNATIONAL ATLANTINS INSURANCE COMPANY; NORTHUMBERLAND GENERAL INSURANCE COMPANY; SIMCOE AND ERIE GENERAL INSURANCE COMPANY,

Defendants,

v.

HARTFORD CASUALTY INSURANCE COMPANY,

Third Party Defendant-Appellant,

and

THE TRAVELERS INDEMNITY COMPANY; PACIFIC EMPLOYERS INSURANCE COMPANY; WALBROOK INSURANCE COMPANY, LIMITED; BERMUDA FIRE & MARINE INSURANCE COMPANY, LIMITED; JOHN RICHARD YOUELL; CERTAIN UNDERWRITING MEMBERS OF LLOYD'S, LONDON, subscribing Policy No. 834/59498/85 and Policy No. 834/59499/85; ZURICH INTERNATIONAL INSURANCE COMPANY, LIMITED; CNA REINSURANCE COMPANY OF LONDON, LIMITED; HEDDINGTON INSURANCE

COMPANY (U.K.), LIMITED; SOVEREIGN MARINE AND GENERAL INSURANCE COMPANY, LIMITED; TOKIO MARINE & FIRE INSURANCE COMPANY (U.K.), LIMITED; TAISHO MARINE AND FIRE INSURANCE COMPANY (U.K.), LIMITED; ALLIANZ INTERNATIONAL INSURANCE COMPANY, LIMITED; STOREBRAND INSURANCE COMPANY (U.K.), LIMITED; TUREGUM INSURANCE COMPANY; CENTURY INDEMNITY COMPANY; GIBRALTAR CASUALTY COMPANY; TWIN CITY FIRE INSURANCE COMPANY; HARBOR INSURANCE COMPANY; FIDELITY AND CASUALTY COMPANY OF NEW YORK; NUTMEG INSURANCE COMPANY; FIRST STATE INSURANCE COMPANY; H. S. WEAVERS UNDERWRITING AGENCY; STONEWALL INSURANCE COMPANY; TEXAS PACIFIC INDEMNITY COMPANY; EMPLOYERS INSURANCE OF WAUSAU; AMERICAN HOME ASSURANCE COMPANY; CHUBB INSURANCE COMPANY OF CANADA; ALLIANZ UNDERWRITERS INSURANCE COMPANY; LONDON GUARANTEE AND ACCIDENT COMPANY OF NEW YORK; REPUBLIC INSURANCE COMPANY; LANDMARK INSURANCE COMPANY; AETNA CASUALTY & SURETY COMPANY; CALIFORNIA UNION

INSURANCE COMPANY; CERTAIN UNDERWRITERS AT LLOYD'S, LONDON; HALIFAX INSURANCE COMPANY; SCOTTISH & YORK INSURANCE COMPANY, LIMITED; THE FEDERAL INSURANCE COMPANY; ST. PAUL SURPLUS LINES INSURANCE COMPANY; LEXINGTON INSURANCE COMPANY; LAURENTIENNE GENERALE COMPAGNIE D'ASSURANCE; KANSA GENERAL INSURANCE COMPANY, LIMITED; AETNA CASUALTY OF CANADA; GUARDIAN INSURANCE COMPANY OF CANADA; LA COMPAGNIE D'ASSURANCE CONTINENTAL DU CANADA; INTERNATIONAL INSURANCE COMPANY; ZURICH INSURANCE COMPANY; RELIANCE INSURANCE COMPANY, INCORPORATED; ROYAL INDEMNITY COMPANY; BOREAL PROPERTY AND CASUALTY INSURANCE, INCORPORATED, formerly known as Aetna Casualty of Canada; BOREAL ASSURANCES, INCORPORATED, formerly known as Laurentienne Generale Compagnie D'Assurance,
Third Party Defendants,

CIGNA INSURANCE COMPANY OF CANADA,
Party in Interest.

7

LAFARGE CORPORATION; LAFARGE
CANADA INCORPORATED,
Plaintiffs-Appellants,

v.

No. 96-2356

NATIONAL UNION FIRE INSURANCE
COMPANY, of Pittsburgh, Pennsylvania,
Defendant-Appellee.


LAFARGE CORPORATION; LAFARGE
CANADA INCORPORATED,
Plaintiffs-Appellees,

v.

No. 96-2559

NATIONAL UNION FIRE INSURANCE
COMPANY, of Pittsburgh, Pennsylvania,
Defendant-Appellant.

Appeals from the United States District Court
for the District of Maryland, at Baltimore.
Alexander Harvey II, Senior District Judge.
(CA-90-2390-H, CA-93-4173-H, CA-95-2795-H)

Argued: May 5, 1997

Decided: August 28, 1997

Before HALL, LUTTIG, and MICHAEL, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

8

**COUNSEL**

**ARGUED:** R. Nicholas Gimbel, HOYLE, MORRIS & KERR, Phila-delphia, Pennsylvania, for Appellants. Allan D. Windt, Bryn Mawr, Pennsylvania; Paul S. Schleifman, LANE & MITTENDORF, L.L.P., Washington, D.C., for Appellees. **ON BRIEF:** Jill A. Douthett, Eliza-beth W. Fox, HOYLE, MORRIS & KERR, Philadelphia, Pennsylva-nia, for Appellants. M. Bradley Hallwig, Gregory L. Van Gieson, ANDERSON, COE & KING, Baltimore, Maryland; Frank P. Sapo-naro, Jr., LANE & MITTENDORF, L.L.P., Washington, D.C., for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

In this opinion we decide two related cases. They involve questions about the obligation of insurance companies to pay defense expenses and settlement costs incurred in a product liability action brought by Lone Star Industries against Lafarge Corporation (Lafarge US) and Lafarge Canada, Inc. (Lafarge Canada). We addressed the underlying litigation in In re: Lone Star Industries, Inc. , 19 F.3d 1429, 1994 WL 118475 (4th Cir. 1994) (unpublished).

In the first case before us today (Lafarge I) , No. 96-1389(L), Appellants-Cross Appellees Lafarge US and Lafarge Canada (some-times collectively Lafarge) appeal from a trial and judgment awarding them $19 million for their expenses in defending the product liability lawsuit mentioned above. That underlying suit was triggered by prob-lems with cement Lafarge had manufactured and sold over a seven-year period. Lafarge US and Lafarge Canada appeal because they claim that their recoverable expenses and damages are much higher than $19 million and that, among other things, they are entitled to a

9

new trial. The district court equitably apportioned the $19 million judgment among several of Lafarge's insurance companies according to each insurer's "time on the risk", that is, the amount of time each company insured Lafarge. Appellee-Cross Appellant Hartford Casualty Insurance Company (Hartford) is one of those insurers, and its share was determined to be about $2 million. Hartford cross-appeals the judgment against it. We affirm the judgment in Lafarge I.

In the second case (Lafarge II), No. 96-2356(L), Lafarge appeals from an order of the district court apportioning to Appellee-Cross Appellant National Union Fire Insurance Company (National Union) an equitable share of the $11.2 million settlement paid by Lafarge to Lone Star to settle the underlying case after a retrial. National Union refused to contribute to the settlement. In Lafarge II the district court ordered National Union to pay about $1.9 million of the settlement figure. Lafarge argues that National Union should pay more, and National Union (in its cross-appeal) argues that it should pay much less. We also affirm the judgment in Lafarge II .

I.

Lafarge US and its wholly owned subsidiary, Lafarge Canada, sold cement to Lone Star Industries over a seven-year period from 1983 to 1989. The cement failed to hold up as promised. As a result, concrete railroad ties that Lone Star made with Lafarge's cement deteriorated. Lone Star initiated a lawsuit against Lafarge and obtained a $1.2 million jury verdict. Lone Star appealed to us, and we reversed and remanded for a new trial. On retrial, the jury awarded Lone Star about $8 million. While the case was on appeal from the judgment on the second verdict, Lafarge agreed to pay Lone Star $11.2 million in settlement. National Union did not participate in the settlement, though Lafarge's other insurers did.

Lafarge US and Lafarge Canada jointly spent $27 million to defend the suit by Lone Star, and they sued their insurance companies for reimbursement. Lafarge had sold cement to Lone Star for seven years. The district court, applying a pro rata time-on-the-risk analysis, divided the liability into twelve segments: one for each Lafarge company (Lafarge US and Lafarge Canada) for each of the seven years. Instead of fourteen segments, seven for Lafarge US for each of seven

10

years and seven for Lafarge Canada for each of seven years, there were only twelve because two segments would have been attributed to an insurance company that became insolvent. If an insurer insured Lafarge US for two years, for example, it got two segments and two-twelfths of the liability. Hartford insured Lafarge US, but not Lafarge Canada, for one of those seven years. Hartford was responsible for just one of the twelve segments and thus one-twelfth of the defense costs.

Lafarge I went to trial on the issue of how much of the defense costs was reasonable and necessary, and the jury returned a verdict setting the figure at $19 million. Hartford's one-twelfth share, plus interest and less a one-twelfth share of its deductible, comes out to about $2 million.

Lafarge appeals several issues in Lafarge I and asks for a new trial on the reasonableness of defense costs. It argues that (1) the district court erred in its jury instructions, (2) Hartford is equitably estopped from contesting the reasonableness of the defense costs, (3) certain documents pertaining to the reasonableness of the costs should have been admitted into evidence, (4) it should have been allowed to call a fee expert in rebuttal, and (5) it should be allowed to recover attorney's fees for this litigation. Hartford cross-appeals several issues, arguing that (1) it is not liable because the cement was manufactured by Lafarge Canada (not by Hartford's insured, Lafarge US), (2) even if it is liable, it is entitled to indemnification, (3) the policy's $250,000 deductible applies to each lot of cement delivered to Lone Star, (4) its duty to pay defense costs was excused by Lafarge's failure to cooperate, (5) the district court's equitable apportionment fails to take into account a share paid by a settling party, (6) the district court erred by only applying one-twelfth of the $250,000 deductible to Hartford's one-twelfth share of the judgment, and (7) the district court should not have awarded prejudgment interest to Lafarge.[1]

_____

[1] As a preliminary matter, we note that Lafarge initially appealed the district court's rulings on its common law and statutory bad faith claims. In a motion granted by this court, Lafarge voluntarily dismissed its appeal on the bad faith issues. Several of Lafarge's arguments challenging evidentiary rulings pertaining to the bad faith claims have also been dropped by Lafarge.

11

In Lafarge II, Lafarge appeals the apportionment of liability to National Union and the denial of attorney's fees. National Union cross-appeals the apportionment.

II.

Lafarge I

We turn first to Lafarge's appeal from the litigation with Hartford over the reasonableness of defense costs in the Lone Star case. First, Lafarge appeals the district court's decision not to instruct the jury that usual and customary attorney's fees are presumed reasonable under Texas law. We agree with the district court that the jury was entitled to consider the reasonableness of these costs without regard to any presumption. Accordingly, we affirm the district court on this issue. Lafarge also argues that Hartford is equitably estopped from contesting the reasonableness of the expenses. Lafarge points to a letter from Hartford's counsel which said Hartford would pay its share of defense costs, subject to some "potential coverage defenses." Lafarge argues that Hartford did not specify that it meant "reasonable" defense costs. Nothing in the letter, however, amounts to a waiver of the reasonableness standard. We agree with the district court that equitable estoppel did not apply and that the reasonableness of defense costs remained an issue of fact to be decided by the jury. Accordingly, we affirm the district court on this issue.

Lafarge next contests two evidentiary rulings. The first concerns whether certain documentary evidence might have confused the jury. At trial Lafarge sought to introduce certain documents demonstrating that a bankruptcy court had approved as reasonable Lone Star's petitions to pay its steep legal fees in pursuing Lafarge in the underlying litigation. The district court allowed Lafarge to tell the jury the total amount of the fees incurred by Lone Star, but it did not admit the bankruptcy court documents. Lafarge also wanted to introduce a document comparing the fees of Lone Star and Lafarge during one time period. The work being performed by the two law firms during the period was different, however, and this fact was not apparent from the face of the document. It was well within the district court's discretion to exclude these documents on the ground that they might have confused the jury. See Fed. R. Evid. 403 ("Although relevant, evidence

12

may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, <u>confusion of the issues, or misleading the jury</u>, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.") (emphasis added). <u>See also United States v. Aramony</u>, 88 F.3d 1369, 1377 (4th Cir. 1996) (reviewing Rule 403 evidentiary ruling under abuse of discretion standard), <u>cert. denied</u>, 117 S. Ct. 1842 (1997).

The second evidentiary issue concerns a rebuttal witness. The district court ruled that Lafarge could not call a new fee expert to rebut the testimony of Hartford's fee expert, who according to Lafarge, went (unfairly) beyond the opinions expressed in his deposition testimony. The district court determined that Lafarge, through the testimony of its initial expert and through its opportunity to cross-examine Hartford's expert about the discrepancies in his testimony, had a fair opportunity to present its case on the reasonableness of its defense costs. The testimony of the rebuttal expert was likely to be cumulative to some extent, and it may have lengthened the trial unnecessarily. Therefore, the district court's decision not to allow Lafarge to call the rebuttal expert was not an abuse of discretion. <u>See</u> Fed. R. Evid. 403. We therefore affirm the district court on these evidentiary issues.

Lafarge's next issue concerns attorney's fees in the present litigation, <u>Lafarge I</u>. Because Lafarge was awarded a judgment in this case (based on its insurance contract) for its defense costs in the Lone Star litigation, Lafarge says it is entitled to attorney's fees for prosecuting this case. The district court held that Texas law did not allow Lafarge to recover such fees. The district court noted that under Texas law attorney's fees may be recovered on a breach of contract claim, but not if the contract is a "contract issued by an insurer that is subject to the provisions of . . . Article 21.21" of the Texas Insurance Code. <u>See</u> Tex. Civ. Prac. & Rem. § 38.006(4). Because Hartford is an "insurer that is subject to" Article 21.21, the district court held it was exempt from the payment of attorney's fees.

Lafarge reads the statute differently to avoid the statutory exception for insurers subject to Article 21.21. Lafarge argues that the "subject to" language refers to "contract" rather than "insurer." Lafarge then argues that the insurance contract here is not a contract "subject to" Article 21.21. Lafarge concludes, therefore, that its insurance con-

13

tract claim is a regular breach of contract claim for which it may recover attorney's fees.

Lafarge's interpretation of the statute might be correct if the clause "issued by an insurer" was set off by commas ("contract, issued by an insurer, that is subject to [Article 21.21]") or if the clause was otherwise set apart ("contract subject to Article 21.21 that is issued by an insurer"). It is not, and the "subject to" language more easily applies to the noun just before it, "insurer."**2** We recognize that Lafarge can find some limited authority to support its argument. See, e.g., Barnett v. Aetna Life Ins. Co., 723 S.W.2d 663 (Tex. 1987) (affirming award of attorney's fees without explanation). The Texas Supreme Court, however, has interpreted the section to mean that some insurers (not some contracts) are within the scope of this provision and some insurers are not. See Dairyland County Mut. Ins. Co. v. Childress, 650 S.W.2d 770, 775 (Tex. 1983) ("Dairyland is a county mutual insurance company and as such is not one of the insurors[sic] exempt from the provision[.]"); see also Bituminous Cas. Corp. v. Vacuum Tanks, Inc., 975 F.2d 1130, 1133 (5th Cir. 1992) ("This language [in Dairyland] implies that an insurer who falls within the provisions of section 38.006 is exempt from the payment of attorney's fees[.]") We believe that the "subject to" language refers to "insurer," not "contract." We therefore conclude that the district court read the statute and relevant case law correctly, and we affirm the district court on this issue.

Hartford also appeals several issues. Because Hartford only insured Lafarge US, not Lafarge Canada, Hartford says that it is not responsible for defense costs. Hartford argues that Lafarge US (the distributor) was simply a conduit for any misrepresentations made by Lafarge Canada (the manufacturer) and that Lafarge Canada is ultimately responsible through indemnity/subrogation principles. The district court noted that the facts in the underlying trial established a breach of express warranty, and the jury verdict did not distinguish between Lafarge US and Lafarge Canada. The court concluded as a matter of law that Lafarge US participated in the breach of express warranty

_____

**2** This construction ("subject to" refers to "insurer"), which was adopted by the district court, follows the statutory construction rule of the last antecedent (a phrase should be read to modify its immediate antecedent).

14

and was not a mere conduit for the misrepresentations by Lafarge Canada. The court then held that Lafarge US's insurers (including Hartford) were therefore liable along with Lafarge Canada's insurers. On this issue, we affirm on the reasoning of the district court.

Hartford also argues that the sole cause of Lone Star's damages was a manufacturing defect. Hartford contends that because the manufacturing was performed by Lafarge Canada, not Lafarge US, Hartford is entitled to recover from Lafarge Canada any defense costs it might pay on behalf of Lafarge US. This argument also fails, however, in light of the jury verdict. As we noted above, we agree with the district court that the liability rested on the jury's finding of a breach of express warranty, not a manufacturing defect. Both Lafarge US and Lafarge Canada participated in the breach of express warranty. Therefore, we agree with the district court that Hartford has no right to recover from Lafarge Canada through indemnity/subrogation.

Hartford argues that a $250,000 deductible applies to each lot of defective cement that Lafarge US delivered to Lone Star. The policy states:

> Amount and Application of Deductible
> 250,000 Each Occurrence and/or
> Accident and/or Each Claim

After reviewing the district court's extensive opinion from the bench on this issue, we agree with the court's interpretation of "each occurrence," its conclusion that the "occurrence" and underlying cause of the liability was the "continuous, large-scale manufacture and sale" of defective cement, and its holding that there was only one "occurrence" for deductible purposes. Here, we affirm on the reasoning of the district court.

Hartford argues that its duty to pay defense costs was excused because Lafarge US breached a duty to cooperate when it failed to provide certain information to Hartford. The clause in the policy covering the duty to cooperate, however, was designed to help Hartford pursue or defend claims on Lafarge's behalf. Hartford was not defending the suit against Lone Star at the time Hartford says Lafarge should have provided additional documentation. Indeed, Hartford was

15

refusing to help. We believe the duty to cooperate clause was not intended to extend to a situation where the information was requested after parties are adversaries in litigation and the insurer has refused to act on the insured's behalf. We therefore agree with the district court that Lafarge did not breach a duty to cooperate, and we affirm on this issue.

Finally, we turn to the heart of this controversy-- the district court's apportionment of the defense costs among the various insurance companies. The jury found that $19 million of the costs were reasonable and necessary and therefore recoverable by Lafarge US and Lafarge Canada under the governing insurance policies. The district court took the amount of this jury verdict ($19 million), less pretender expenses, and divided by 12, which amounted to $1,590,000. The district court applied 1/12th of a $250,000 deductible to the 1/12th share Hartford bore, and it added $550,000 in prejudgment interest. The end result was a judgment against Hartford of about $2,150,000.

Lafarge US and Lafarge Canada were both at fault for breaching express warranties that they made to Lone Star, so the insurers of both Lafarge US and Lafarge Canada were responsible for defense costs. Because the insurers of both companies are jointly and severally liable, each one, including Hartford, was potentially responsible for the whole $19 million jury verdict, plus interest. To avoid, among other things, later lawsuits among insurance companies to litigate contribution questions, the district court decided that"fairness requires an apportionment of defense costs in this case."

The first apportionment issue stems from a settlement between Lafarge and Nationwide, another Lafarge insurer, for about $5 million. Hartford complains that it is paying more than its fair share under joint and several liability principles because Nationwide settled for more than the share it ultimately would have owed had it also gone to trial. Therefore, Hartford argues, the district court should have reduced the jury verdict by the $5 million first, and then apportioned the remainder among the remaining insurers. This would have provided a windfall to Hartford, however. Its judgment would be reduced only because another insurer decided to settle rather than liti-

gate in court.**3** Equitable apportionment is, as the name suggests, a doctrine of equity, and the district court's decision to have Hartford pay its fair share and deny it the windfall was not an abuse of discretion.

Hartford argues next that the district court erred when making its apportionment calculation by giving it credit for only one-twelfth of the $250,000 deductible. As explained above, the district court took Hartford's one-twelfth share and subtracted one-twelfth of the deductible. This is consistent with the decision that the $19 million in defense costs was caused by one occurrence: (1) the"occurrence" created $19 million in defense costs, (2) the $250,000 deductible applies against that one occurrence, and (3) the total of $19 million less $250,000 is apportioned equitably into 12 shares. The application of the one-twelfth deductible is simply an adjustment to properly reflect the fact that Hartford is paying one-twelfth of the defense costs that are due. Accordingly, we affirm on the apportionment issues.

Lastly, Hartford challenges the award of prejudgment interest. We have reviewed the district court's opinion on this issue and its conclusion that the prejudgment interest is appropriately considered part of the joint defense costs to be equitably apportioned. We affirm on the reasoning of the district court.**4**

_____

**3** To illustrate the point, suppose Nationwide had settled for less than the share it would have owed based on the ultimate (total) jury verdict. We would be surprised if Hartford would then argue that its (Hartford's) share should be increased to account for the shortfall. The district court's apportionment appropriately placed the risk of the settlement being too small or too large (as compared to the ultimate verdict) on the two settling parties (Lafarge and Nationwide). This left the other insurers unaffected. This is consistent with the equitable apportionment scheme as a whole, which is based on the principle that each insurer should pay a share based on its time on the risk.

**4** Both Lafarge and Hartford raise other issues in their briefs. We have considered those issues and conclude that they are also without merit.

III.

Lafarge II

We now turn to Lafarge II. In that case both Lafarge and National Union challenge the district court's equitable apportionment scheme that allocated the cost of settlement among Lafarge's insurers. The district court determined that certain policy periods for Lafarge Canada were not covered. National Union covered Lafarge Canada (as well as Lafarge US) in 1989-90, the last relevant policy period. The district court found that there were six covered policy periods (5 for Lafarge US and one for Lafarge Canada). Again applying joint and several liability principles, the court apportioned the liability into six segments according to each company's time on the risk. Because National Union was responsible for two segments (1989-90 Lafarge US and 1989-90 Lafarge Canada), it was responsible for one-third (two-sixths) of the liability.

Lafarge argues that the liability should have been first divided 50-50 between Lafarge Canada and Lafarge US, then divided by year. If liability had been allocated in this manner, National Union would be responsible for all of the liability attributable to Lafarge Canada, as it was the only insurer of that company during the relevant periods. Added to its one-fifth share of Lafarge US's liability, National Union would be responsible for more than half the total.

National Union argues that the liability should have been divided by five to reflect the five relevant years. It only insured Lafarge US and Lafarge Canada in 1989-90, and so it would pay only one-fifth of the total.

We have reviewed the district court's opinion, and we believe the court properly applied the same equitable apportionment principles mentioned in Lafarge I. Accordingly, we affirm on the reasoning of the district court.

Lafarge also argues that under Texas law it should receive attorney's fees for prosecuting this case (Lafarge II ), reiterating the same

18

arguments made in <u>Lafarge I</u>. For the reasons stated above in part II of this opinion, we affirm the district court on this issue as well.**5**

IV.

The judgments of the district court in both <u>Lafarge I</u> and <u>Lafarge II</u> are therefore affirmed.

No. 96-1389(L) is <u>AFFIRMED</u>.
No. 96-2356(L) is <u>AFFIRMED</u>.

_____

**5** The parties raise other issues in <u>Lafarge II</u>. We also conclude that those issues are without merit.

19